(98 South. 403)

No. 24038.

## BROUSSARD v. CORMIER et al.

(Nov. 26, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Injunction ⬳5—When mandatory injunction may issue stated.**

While the general rule is that an injunction will issue only in its prohibitory form, when a defendant obstructs a plaintiff in the enjoyment of a real right, as by fencing a common passageway or building a levee across a drainage course, the latter is entitled to a prohibitory injunction restraining the disturbance and to a mandatory injunction for the removal of the obstruction, or to undo what has been illegally done.

**2. Waters and water courses ⬳119(5)—Lower proprietor not authorized to obstruct natural drain from upper estate.**

Under Code, art. 660, granting a servitude of drain in favor of the upper estate against the lower by which the lower estate is burdened with receiving the waters which run naturally from the upper estate where the industry of man has not been used to create such servitude, a lower proprietor is not at liberty to raise any dam or to make any other work to prevent such running of water.

**3. Waters and water courses ⬳119(2) — Rights of proprietor of upper estate as to drainage stated.**

A proprietor of an upper estate can do nothing whereby the natural servitude of drain due by the lower estate may be rendered more burdensome, except that he may make all drainage works necessary to the proper cultivation of his estate by cutting ditches, concentrating the flow of water, and increasing it beyond the slow process by which it would ultimately reach the same destination, although he cannot divert such water from the natural flow.

**4. Waters and water courses ⬳119(5)—Mandatory injunction lies to compel lower proprietor to remove obstruction.**

Where two adjoining estates have practically the same elevation, but there is a difference of a few inches whereby the natural drainage of water is over the lower estate, the proprietor of such lower estate has no right to erect levees diverting the flow of water, and mandatory injunction lies to compel him to remove such obstructions.

Appeal from Fifteenth Judicial District Court, Parish of Jefferson Davis; Jerry Cline, Judge.

Suit by Alfred Broussard against Artalus Cormier and others. Decree for plaintiff, and defendants appeal. Affirmed.

Miller & Miller, of Jennings, for appellants.

Modisette & Adams, of Jennings, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. The plaintiff and the defendant are owners of adjoining farms in section 11, township 11 south of range 4 west. The plaintiff owns the southeast quarter, and the defendant the north half, of said section. The land is of the same general character—low semimarsh, with about the same elevation and possessing little natural drainage. For many years the properties have been cultivated in rice.

In 1918 there was an extraordinary amount of rainfall, which, with the irrigation waters, overflowed the two estates, as well as the surrounding country, to such an extent as to cause great damage and destruction to the rice crops.

This suit is the result of the condition produced by the exceptional and abnormal rainfall of that year. Its purpose is to enforce the legal servitude which the plaintiff claims is due his estate by that of the defendant, to receive all of the surplus waters which naturally fall on his estate.

The petition alleges that the surplus waters which fall on the plaintiff's land, when left unhindered and unobstructed, naturally flow north onto and across the land of defendant, which is alleged to be the lower estate. It is further alleged that the defendant has obstructed the natural flow of water by closing and building up an old

levee which runs along the dividing line of the two properties east and west.

A mandatory injunction was issued, after hearing on a rule nisi, which directed the sheriff to make openings in the levee so as to permit the free passage of the waters from plaintiff's land into a ditch which the defendant had constructed on his own land, and by means of which ditch the waters from defendant's land ultimately were emptied into the low or marsh lands northwest of the defendant's property. The injunction, however, was bonded by the defendant on the same day, and was never executed.

The defendant in his answer admits the construction of the levee between the two properties, but denies that his property owes any servitude of drain to the property of plaintiff. It is alleged that the natural flow of water from the plaintiff's land is not in a northerly direction over the defendant's land, but is in a westerly direction where there exists a sufficient drain for plaintiff's property which was left open and was not obstructed by the defendant. It is alleged further that the only drain in a northerly direction is a private ditch constructed by defendant at a heavy expense and which traverses defendant's property in a northerly course and empties into a larger drain ditch constructed by one Ritchie to drain his own property.

On a final hearing there was judgment recognizing the servitude in favor of plaintiff under certain conditions which will be noticed later, and making the injunction perpetual.

[1] Objection was made to the right of the judge to issue a mandatory injunction in a case like this, even after hearing on a rule nisi. We think the ruling of the court was correct. The general rule is that an injunction will issue only in its prohibitory form, but when a defendant obstructs a plaintiff in the enjoyment of a real right, as by fencing a common passageway or building a levee across a drainage course, the latter is entitled to a prohibitory injunction restraining the disturbance and to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done. State ex rel. Yale v. Judge, 41 La. Ann. 516, 6 South. 512; Black v. Towboat Co., 31 La. Ann. 497; V. S. & P. Ry. Co. v. Webster Sand & Gravel Co., 132 La. 1051, 62 South. 140, 47 L. R. A. (N. S.) 1155.

Such an injunction, however, should never issue ex parte, but only after hearing either on rule or on the merits. It was not issued in this case until the defendant was notified and had his day in court. However, the defendant has suffered no injury except in being required to give bond, since the injunction has never been enforced. If on the merits the court shall find that the case is with the defendant, the injunction will be dissolved. Otherwise it will necessarily be perpetuated.

[2] There is no dispute as to the legal principles applying in suits of this character under ordinary conditions. The Code (article 660) grants a servitude of drain in favor of the upper estate against the lower estate by which the lower estate is burdened with receiving the waters which run naturally from the estate situated above; provided, of course, the industry of man has not been used to create that servitude. The lower proprietor is not at liberty to raise any dam or to make any other work to prevent this running of water.

[3] And the proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome. But with this modification: That the owner of the superior or creditor estate may make all drainage works which are necessary to the proper cultivation and to the agricultural development of his estate. To

that end he may cut ditches and canals by which the waters running on his estate may be concentrated and their flow increased beyond the slow process by which they would ultimately reach the same destination. But the upper proprietor cannot improve his lands to the injury of his neighbor by cutting ditches or canals, or do other drainage works by which the waters will be diverted from their natural flow and concentrated so as to flow on the lower lands at a point which would not be their natural destination. Guesnard v. Bird's Ex'rs, 33 La. Ann. 796; Petite Anse Coteau Drainage Dist. v. Youngsville Drainage Dist., 146 La. 166, 83 South. 445.

It is to be observed that both of the estates under consideration are the more valuable for raising of rice. In the earlier history of that agricultural industry in this state, dependence was had entirely upon Providence or the rain for the necessary water to grow the rice. In the more recent years the work of man has established an artificial irrigation system of canals, ditches, and levees, by means of which water is collected, and the rice fields are flooded at pleasure during the growing season, and the waters released therefrom when the time for harvest approaches. Each of these estates was provided with such instrumentalities by which the necessary water for irrigation, as well as the natural normal rainfall, was collected, cared for, and disposed of for many years prior to this suit without complaint on the part of the owner of either estate as to inadequate drainage, obstructed drainage, or improper artificial drainage. And it is a fact not disputed that the plaintiff has committed no act to make the servitude of the defendant more burdensome, further than was necessary to the proper cultivation of his land in rice; and the works for that purpose did not increase the volume of water that would naturally flow onto the defendant's land in seasons of normal rainfall.

It was the unusual rainfall of 1918, as already stated, which caused the plaintiff's land to overflow, and doubtless the same situation and condition will occur again with a like amount of rain. And this would be the case without the artificial appliances for irrigation purposes.

The plaintiff, however, occupied no worse position than did the defendant and other rice planters in that section of country. After all, we are not very greatly impressed with any serious difference in the legal rights of the parties by reason of any increase of water on account of or resulting from the artificial flooding of the farms. The defendant does not claim that to open up the ditch in question will impose an increased burden on his estate during normal rainy seasons. His sole contention is that his estate owes no servitude of drain whatever to plaintiff's land.

[4] As we have heretofore stated, the two estates have practically the same elevation; still there is a slight difference of a few inches, especially when the surrounding estates, south and east, are taken into consideration. There were four engineers and several other witnesses who testified in the case, and while there is a divergence of opinion among them, we think a decided preponderance of the testimony shows that the tendency of the bulk of the water from rainfall, when not impeded or restrained, is to flow north onto the property of defendant with a slight variation to the west. The district judge, after hearing all of the witnesses, found this to be true. Without going into the details of the evidence, it is sufficient to say that we approve that finding.

If the natural drain was west and not north, as contended for by the defendant, there would, it seems to us, have been no occasion for the defendant to maintain the

levee south of his ditch and next to the line of plaintiff's property. The levee was obviously constructed to protect the ditch and property of defendant from the waters flowing from plaintiff's land.

The judgment rendered by the district judge requires the defendant to remove the levee or a portion thereof near the center of the south line of defendant's property sufficient to allow the free flow of water from plaintiff's land, or to be permitted to be opened a passageway to the ditch which should allow the waters to flow at all times when the said ditch or the double levees are not being used to their fair capacity for the removal of water from the defendant's land, and when the drainage from the plaintiff's land to the northwest is being used by the plaintiff to its fair capacity. The judgment is manifestly fair and just and equitable, alike to both parties, and we can discover no sufficient reason for changing the same in favor of either party.

It is therefore ordered that the said judgment be affirmed, at the appellants' costs.