184 So.2d 595 (1965)
Harris M. KAFFIE et al., Plaintiffs-Appellants,
v.
PIONEER BANK & TRUST COMPANY, Defendant-Appellant.
No. 10489.
Court of Appeal of Louisiana, Second Circuit.
December 21, 1965.
On Rehearing March 23, 1966.
*596 May & Woodley, Shreveport, for plaintiffs-appellants.
Bodenheimer, Looney & Jones, Shreveport, for defendant-appellant.
Before HARDY, GLADNEY and BOLIN, JJ.
HARDY, Judge.
This is a suit by plaintiffs for injunctive relief against actions of defendant which have allegedly interfered with the exercise of a servitude of passage. From judgment granting partial relief in favor of plaintiffs, both plaintiffs and the defendant have appealed.
Plaintiffs and defendant are owners of contiguous tracts of property fronting on Jordan Street in the City of Shreveport, respectively designated as Nos. 808 and 822 of said street. Plaintiffs' property lies east of the tract owned and occupied by defendant. By written agreement duly filed and recorded on February 14, 1955, Malcolm Kaffie and Gilbert D. Peters, then owners of the respective tracts involved in this suit, imposed a joint servitude of passage upon their respective estates, establishing a twelve-foot community drive and passageway over the west six feet of the property now owned by plaintiffs and the east six *597 feet of the property now owned by defendant, running from Jordan Street on the south to an alleyway to the rear of the north line of the respective properties. After reciting the purpose as being the mutual advantage of the respective owners of the contiguous estates, the agreement imposed "* * * a servitude of passage for themselves and all future owners of the estates, their tenants, employees, invitees, licensees, guests and service personel (sic)." The instrument contained the further specific provision:
"That said strip shall be kept open and used as a drive and passageway and shall not be blocked or obstructed by parking vehicles or in any other manner. This being a perpetual servitude and covenant running with the land." (Emphasis supplied)
In this action plaintiffs alleged that the use of the passageway was being impeded, hampered and inconvenienced by defendant in four particular respects which are summarized as follows:
(1). By the encroachment of a brick and concrete pillar of defendant's building easterly into the driveway to the extent of approximately one foot.
(2). By the encroachment of a concrete curb into the driveway extending the entire length of defendant's building from north to south.
(3). By the second story overhang of defendant's building projecting eastward six feet over the driveway above the surface of the drive.
(4). By the use of drive-in service windows in the east and north walls of defendant's bank building which caused a congestion of traffic blocking the driveway for the convenient use of vehicular passage.
After trial, upon the basis of reasons set forth in a written opinion, the district judge rendered judgment which in effect rejected all of plaintiffs' complaints except that which is delineated under (4) above. On this point the judgment enjoined defendant
"* * * from obstructing, closing, or blocking the passageway as it presently exists, and from conducting its business in such manner as to obstruct, close or block the passageway as it now exists, for a period of more than one (1) minute at any time."
The judgment further reserved plaintiffs' rights to claim the recovery of damages resulting from defendant's obstruction or interference with the use of the servitude of passage.
The first two grounds of plaintiffs' complaints as above enumerated have been disposed and, therefore, do not constitute issues upon appeal. The projection of the brick and concrete pillar which was determined to extend .43 feet into the driveway was regarded as minimal and was not considered as constituting an encroachment of sufficiently serious nature to justify injunctive relief. The survey of the property, which was introduced on trial and accepted, established the fact that the claim that the concrete curb extended into the driveway was erroneous. The remaining issues which are tendered for determination on this appeal relate to the questions of interference by reason of the second story projection and the blocking of the drive resulting from the use of the banking service windows by defendant's customers. The claims of the opposed parties which are urged by appeal before this court are clearly set forth in counsel's briefs. Plaintiffs-appellants seek an amendment of the judgment to the extent of enjoining defendant from obstructing the servitude of passage to vehicles having a height greater than 8.43 feet. Defendant-appellant prays for an amendment of the judgment to the extent of increasing the limiting period of *598 vehicles blocking or impeding the free use of the driveway from one minute to three minutes.
There is no basis for substantial dispute as to the material facts which were established on trial of this case. Plaintiffs are engaged in the general practice of dentistry, which practice they conduct in a dental clinic building constructed on their Jordan Street property in the year 1955. The building also provides accommodations for business offices of a few tenants. At the time of the construction of that building plaintiffs caused the community servitude area to be paved with concrete. This driveway was designed to permit the ingress and egress of plaintiffs' patients and others having business in the building between Jordan Street and a parking lot area located in the rear of plaintiffs' building.
In the early part of 1957 defendant completed the construction of a building on its property which is used as a branch bank. In the course of construction the paved community driveway built by plaintiffs was removed, the grade was slightly raised and the area was repaved. The second story of defendant's bank building extends easterly a full six feet over the driveway, to what is the actual line between the contiguous properties, at a height of 8.43 feet at its lowest point above the surface of the drive. It is this second story overhang which now constitutes the most serious point of contention between the parties to this litigation. It was established on trial that one or both of plaintiffs were aware of the plan of defendant's building, including the second story overhang, prior to the time actual construction was begun, but it is also established that neither of plaintiffs ever consented to or acquiesced in any modification of the unrestricted right of passage and use of the servitude. It is clear that it was only after the completion of construction of defendant's building that plaintiffs realized the nature and degree of the interference with the use of the passageway although they had, verbally and in writing, consistently expressed their objections to any nature of interference. The same architect designed, planned and supervised the construction of both buildings erected on the respective properties of plaintiffs and defendant. It was his testimony that the second story level of the Kaffie Dental Clinic building, which was constructed first, extends 1.57 feet to the west over the servitude passageway; that he planned the second story overhang of the defendant's subsequently constructed bank building in order to preserve the symmetrical appearance of the two buildings which was desirable from an esthetic point of view.
The burden of plaintiffs' complaint with respect to the second story overhang of defendant's building is that it completely obstructs and prevents the use of the driveway by trucks which have a height greater than the clearance of 8.43 feet, among which are classified mail and express trucks, city garbage trucks and supply delivery vehicles, including those delivering dairy products, soft drinks, etc. Because vehicles of this type cannot use the driveway leading to the parking lot at the rear of plaintiffs' building, the front entrance must be used for service and delivery purposes and this fact causes a substantial degree of inconvenience. An attempt is made on behalf of defendant to offset this objection on the ground that trucks which cannot clear the overhang and, therefore, are prevented from using the driveway, are able to reach the rear of plaintiffs' building by a route which leads into the narrow Jeffries Street to the west of defendant's building and then over defendant's parking lot at the rear to the parking area in the rear of plaintiffs' building. It is abundantly clear from the record that this alternate route is available only by permission or sufferance of defendant; is completely without any legally established guarantee of continuance, and has never been agreed to nor accepted by plaintiffs in lieu of the right of passage which they claim upon the basis of the legally contracted and established servitude.
*599 The judgment appealed from rejected plaintiffs' claim for an injunction prohibiting the obstruction of the servitude of passage by the second floor overhang of defendant's building for so long a time, and only for so long a time as unrestricted access was permitted by the route described leading from Jeffries Street across defendant's property in the rear of its building. It is to this portion of the judgment that plaintiffs-appellees direct their principal objection.
The written agreement by which the servitude under consideration in this case was established, as quoted supra, provides with the utmost clarity and certainty the obligation that it shall be kept open and used as a drive and shall not be obstructed in any manner. R.C.C. Article 722 relating to the right of passage specifically provides that when such right results from a contract "* * * its extent and the mode of using it is regulated by the contract."
Also pertinent to consideration of the issue presented are the provisions of R.C.C. Article 777 which read as follows:
"The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
"Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
"Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due cannot refuse it." (Emphasis supplied)
Under the uncontrovertibly established facts of this case there can be no question as to the conclusion that the second story overhang of defendant's building diminishes and renders inconvenient the unrestricted use of the servitude which was provided by the original agreement. It is clear under the second paragraph of the above quoted article that defendant cannot transfer the use of the servitude to another place. It follows that the ground of defense based upon an alternate route cannot be considered.
Our jurisprudence is equally clear with reference to the establishment, the right to exercise the use of passage and the remedies available as the result of the impediment to such use. The contract between the parties governs the use of the servitude; Clause v. Broussard (La.App. 3rd Cir., 1962, writs denied), 146 So.2d 828. As early as 1820 the owner of a house which encroached two feet upon a servitude of passage common to neighboring tracts was ordered to remove the building; Waters v. Backus, 8 Mart., O.S., 1.
The holdings in comparatively recent cases have uniformly required the removal of various natures of obstructions which interfered with or obstructed the use of servitudes, both conventional and contractual; Nelson v. Warren (La.App. 2nd Cir., 1963), 157 So.2d 762; James v. Buchert (La.App. 4th Cir., 1962), 144 So.2d 435; Louisiana Power & Light Co. v. Bennett (La.App. 1st Cir., 1959), 107 So.2d 468; Arkansas Louisiana Gas Co. v. Cutrer (La. App. 2nd Cir., 1947), 30 So.2d 864; Campbell v. Bennett (La.App. 2nd Cir., 1942), 11 So.2d 31.
The principle recognized in the above cases requiring the removal of obstructions is predicated upon the remedy established by R.C.C. Articles 864, 865, which provide that the obstructions may be destroyed (removed) on the basis of a showing of injury and detriment.
The appeal of defendant-appellant, as noted supra, seeks an increase in the period established in the judgment of the district court, limiting the defendant from *600 conducting its business in such a manner as to obstruct or block the passageway as now existing for a period of more than one minute at any time, to a period of three minutes. In our opinion, the facts established in the record do not justify this increase. Indeed, if the point were contested, we might have some serious question as to the judgment which, in effect, permits the blocking of the drive or the impediment to traffic for any period of time whatsoever.
Counsel for defendant-appellant urges that the overhang of plaintiffs' clinic building at the second story level served as a precedent for and justified the construction of the overhang of defendant's bank building. This argument is not entitled to serious consideration. It must first be observed that the overhang of the clinic building extended only 1.57 feet over the driveway and did not block or impede passage. An overhang of defendant's building to an equal extent would still have left an opening of slightly less than nine feet which would have been sufficient for the passage of vehicles of all kinds. Secondly, it must be observed, in the words of the trite expression which has been subjected to indiscriminate use, "two wrongs do not make a right." It may further be pointed out that if the overhang of plaintiffs' building can be established as the cause of impediment to the use of the servitude of passage, the defendant has at all times the availability of the same right which is asserted by plaintiffs in this suit.
Counsel further contends that the removal of the second story overhang of defendant's building would involve a material and disproportionate expenditure on the part of defendant. The architect testified, admittedly upon the basis of an "off-the-cuff" estimate made mentally while on the witness stand and subject to a substantial margin of error, that the correction of the obstruction caused by the second story overhang of defendant's building would necessitate an expenditure of some $65,000.00 or more. It is true that the imposition of this remedy upon defendant may appear, from its point of view, to constitute a harsh and drastic burden. We acknowledge that this conclusion is reasonable, but, while it is regrettable, we cannot provide by any definite or legally authorized decree for an alternative. However, in consideration of the fact that this is an equitable proceeding, it is not improper for this court to suggest that a practical, satisfactory and less expensive method of correcting the condition may be discovered and executed. For example, there appears to be no reason why the grade of the driveway could not be lowered to a degree which would permit the space for clearance of vehicles having a height in excess of 8.5 feet. It is further entirely possible that defendant might attempt to avail itself, factual circumstances permitting, of the alternative provided by the third paragraph of R.C.C. Article 777, cited supra. It is to be presumed that plaintiffs are reasonable individuals and when properly approached would be inclined to agree to a reasonable solution of the existing problem.
For the reasons assigned the judgment appealed from is amended to the extent of annulling and striking out that portion which rejects plaintiffs' demands for an injunction prohibiting the obstruction of the servitude of passage resulting from the overhanging extension of the second floor of the building presently existing on the property owned by the defendant and substituting therefor the following decree:
It is ordered, adjudged and decreed that defendant herein, Pioneer Bank & Trust Company, its agents and employees, be and they are hereby permanently enjoined, restrained and prohibited from obstructing, closing or blocking the servitude of passage in such manner as to impede, hinder or inconvenience its use for the passage of vehicles requiring vertical clearance to a height, based upon the reasonable necessity, requirements and convenience of plaintiffs, in excess of eight feet six inches.
As amended the judgment appealed from is affirmed at the cost of defendant-appellant.

*601 ON REHEARING
The decree set forth in our opinion on original hearing of this case enjoined defendant from obstructing the servitude of passage
"* * * in such manner as to impede, hinder or inconvenience its use for the passage of vehicles requiring vertical clearance to a height, based upon the reasonable necessity, requirements and convenience of plaintiffs, in excess of eight feet six inches."
In application for rehearing defendant has indicated its willingness to conform to this decree but quite properly has pointed out the fact that it is necessary to establish a definite figure of vertical clearance.
The Court was aware of this necessity at the time of rendition of its judgment but strongly suggested that a "reasonable solution" of the problem could be effected by agreement of the parties. This suggestion was based upon the presumption that "plaintiffs are reasonable individuals."
It appears that an agreement cannot, or, in any event, has not been reached, and it follows that defendant is entitled to have a definite pronouncement upon the height of clearance. Such a pronouncement cannot be made by this court inasmuch as the record is devoid of evidence which would support with any certainty the height of clearance required by the reasonable necessity, requirements and convenience of the plaintiffs. For this reason, it is necessary to remand the case for the purpose of supplying the necessary evidence.
Accordingly, it is ordered, adjudged and decreed that this case be and it is remanded to the Honorable the First Judicial District Court in and for the Parish of Caddo, State of Louisiana, for the purpose of receiving evidence as to the height of vertical clearance which would be necessary in order to conform to the views expressed in the opinion of this Court.