278 So.2d 496 (1973)
James M. ARMSTRONG
v.
RED RIVER, ATCHAFALAYA AND BAYOU BOUEF LEVEE BOARD.
No. 52559.
Supreme Court of Louisiana.
May 7, 1973.
Dissenting Opinion June 11, 1973.
*497 Walter M. Hunter, Jr., Alexandria, for plaintiff-applicant.
Edwin O. Ware, Dist. Atty., Gus Voltz, Jr., Asst. Dist. Atty., for defendant-respondent.
Provosty & Sadler, LeDoux R. Provosty, Jr., Alexandria, for amicus curiae.
SANDERS, Chief Justice.
We review a judgment of the Third Circuit Court of Appeal maintaining a servitude granted by plaintiff to the Red River, Atcahfalaya and Bayou Bouef Levee Board for the construction and maintenance of canals, ditches and levees.[1] We affirm the judgment.
In 1949, plaintiff granted the Levee Board a servitude over a tract of land containing 22.76 acres by a written instrument, in the following terms:
"I moreover give and grant to said Levee Board full acquittance; release and discharge from any and all liability to me for any lands and improvements used, or destroyed, and any and all damage that has been caused, or will be caused, my said property by the building of the U. S. Bouef Cocodrie Diversion Channel Canal/Levee, giving and granting to said Levee Board, its successors or assigns, the right to use all or any part of the above described property for any purpose with, or connected with construction or excavation of canals or ditches, storage or placement of spoil or spoil dirt, storage or placement of any and all machinery and/or equipment, irrigation, storage or empounding of water, levee construction or relocation and flood control or anything incidental thereto."
In consideration of the release clause, plaintiff received the sum of $4,738.00.
Shortly after acquiring the servitude, the Levee Board constructed a large drainage canal, known as the Bayou Bouef-Cocodrie Diversion Canal, which crossed the western part of plaintiff's land but did not cover the entire tract. Thereafter, the canal was regularly inspected and maintained. The maintenance included the periodic use of heavy equipment, such as draglines, bulldozers, and trucks.
On December 16, 1969, plaintiff filed suit to cancel the servitude as to that portion of the tract beyond the banks of defendant's canal because of non-usage for ten years.
The district court rendered judgment for the plaintiff and restricted the defendant's servitude to the drainage canal and the land within one hundred feet of the canal.
The Court of Appeal reversed, one judge concurring and one judge dissenting. The holding of the Court was that the servitude was a continuous, apparent servitude and, because no act contrary to the servitude under Louisiana Civil Code Article 790 had been shown, the prescription of non-usage had not run. We agree.
Under the 1949 contract, the servitude was to encompass "the right to use all or any part of the ... property... for any purpose with or connected with construction or excavation of canals or ditches ...". This contractual provision is the law between the parties. It governs the extent and mode of use. LSA-C.C. Art. 722; Clause v. Broussard, 146 So.2d 828 (1962), writ ref. 243 La. 1004, 149 So.2d 763 (1963); Kaffie v. *498 Pioneer Bank & Trust Co., La.App., 184 So.2d 595 (1965).
All servitudes are classified according to use and appearance. With regard to use, Article 727 of the Louisiana Civil Code defines servitudes as either continuous or discontinuous:
"Continuous servitudes are those whose use is or may be continual without the act of man. Such are aqueducts, drains, view and the like. Discontinuous servitudes are such as need the act of man to be exercized. Such are the right of passage, of drawing water, pasture and the like."
Servitudes are apparent or non-apparent, on the basis of appearance, Civil Code Article 728 provides:
"... Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct. Non-apparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height."
From the above articles, it is clear that the present servitude is a continuous, apparent servitude of drain. See La. Irrigation and Mill Co. v. Pousson, 262 La. 973, 265 So.2d 756 (1972); Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972). This classification has important legal effects on prescription.
Under Article 790 of the Louisiana Civil Code, an act contrary to the servitude is required to start prescription running against such a continuous servitude. Examples of contrary acts are enumerated in Civil Code Article 791:
"Acts contrary to the servitude are the destruction of works necessary for its exercise; as the stopping of spouts which carry off rain, or of windows or apertures which are necessary to the exercise of the right of view."
The record in the present case reflects no act contrary to the servitude. The canal was maintained and kept free of obstructions. Hence, no act occurred to trigger the running of prescription.
Plaintiff, however, relies heavily upon Articles 798 of the Louisiana Civil Code which provides:
"If, on the contrary, the owner has enjoyed a right less extensive than is given him by his title, the servitude, whatever be its nature, is reduced to that which is preserved by possession during the time necessary to establish prescription."
He contends that, because only a portion of the tract has been used, the area of the servitude is reduced under the above Article to the portion used.
Although the contention is substantial, we find it to be without merit for two equally valid reasons.
Article 798 deals with the mode of servitude, that is, the manner of exercise, and not the land area subject to the servitude. This becomes evident when the Article is construed in pari materia with Civil Code Articles 796 and 797. Article 796 introduces the subject of mode, and the following two articles develop the subject in more detail. Article 798 refers to a less extensive right, not to a less extensive area. Our conclusion in this regard is fortified by an examination of the recognized sources of the Article. See Louisiana Legal Archives, Project of the Civil Code of 1825, p. 91 (1937); Domat, part I, Book I, Tit. 12, Sect. 6, No. 5; Toullier, vol. 3, No. 700.[2]
*499 As to area, the law is well-settled that the use of any part of a continuous tract of land under a servitude preserves the servitude on the entire tract. LSA-C. C. Arts. 656, 789; Trunkline Gas Co. v. Steen, 249 La. 520, 187 So.2d 720 (1966); Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746 (1946); Lee v. Giaque, 154 La. 491, 97 So. 669 (1923).
Moreover, no provision of Article 798 disturbs the regular rule for the beginning of prescription. As to the beginning of prescription, Article 790 controls. It stipulates that for continuous servitudes, prescription for non-usage begins "from the day any act contrary to the servitude has been committed." As we have already observed, no act contrary to the servitude has been shown. Hence, the running of prescription here has never begun.
Finally, plaintiff relies upon Article 780 of the Louisiana Civil Code. This Article deals with servitudes of passage in which the titles fail to designate their breadth and manner of use. Obviously, the Article has no application to a servitude of drain in which the area and manner of use have been designated.
We hold, therefore, as did the Court of Appeals, that the servitude held by the Levee Board is unimpaired by the prescription of nonusage.
For the reasons assigned, the judgment of the Court of Appeal is affirmed at plaintiff's costs.
SUMMERS, J., dissents and will assign reasons.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
Cases involving oil and gas servitudes cannot always help in interpreting predial servitudes. C.C. 798 is clearly applicable. Servitudes upon the land of others should not be perpetuated beyond the requirements of the contract and the law.
SUMMERS, Justice (dissenting).
The language of the law is clear and unequivocal. It states: "If, on the contrary, the owner has enjoyed a right less extensive than is given him by his title, the servitude, whatever be its nature, is reduced to that which is preserved by possession during the time necessary to establish prescription." La.Civil Code art. 798. Domat, quoted in the majority opinion, further states the meaning of Article 798: "If I have enjoyed a right less extensive than my title, the servitude, whatever be its nature, is reduced to that which is preserved through use, during the time necessary to establish prescription." Domat, part I, Book I, Tit. 12, Sec. 6, No. 5; Toullier, Vol. 3, No. 700.
The exercise of a mineral servitude cannot be likened to the exercise of the surface servitude considered here. Conceding arguendo that it is well-settled (which I do not agree is a fact[1]) that the use of any part of a continuous tract of land under a mineral servitude preserves the servitude on the entire tract, I cannot agree that the same principle applies here. Exercise of a mineral servitude is based *500 upon the theory that minerals underlie the entire tract, and withdrawal of oil or gas from one portion of the reservoir amounts to a withdrawal from the entire reservoir. Obviously, the use of the surface of the land is different. Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746 (1947). It is error, therefore, for the majority to rely upon the theory of the mineral servitude. These principles were devised by the cases to fit the special circumstances involved there, where no written law covered the subject. Yet the majority disregards the explicit language of Article 798 applying particularly to the facts of this case and applies the inappropriate principles of mineral servitudes.
Unfortunately, the majority opinion does not relate the facts in detail. They are: A survey was prepared by the U.S. Corps of Engineers, dated June 15, 1949, depicting thereon the plaintiff's tract and others. Plaintiff's tract consisted of 23.80 acres, being 500 feet wide on the north and 700 feet wide on the south end. The area of the right-of-way purchased by defendant is delineated on this plat and involves about two-thirds of plaintiff's tract. This area is the subject of the 1949 right-of-way agreement providing:
I moreover give and grant to said Levee Board full acquittance, release and discharge from any and all liability to me for any lands and improvements used, or destroyed, and any and all damage that has been caused, or will be caused, my said property by the building of the U.S. Boeuf Cocodrie Diversion Channel Canal/Levee, giving and granting to said Levee Board, its successors or assigns, the right to use all or any part of the above described property for any purpose with, or connected with construction or excavation of canals or ditches, storage or placement of any and all machinery and/or equipment, irrigation, storage or empounding of water, levee construction or relocation and flood control or anything incidental thereto.
Thereafter a survey of the area located within the confines of the right-of-way was made in order to determine the ultimate location of the drainage canal. In conjunction with this survey, certain clearing, snagging and excavation was done. Following this, machinery and equipment were brought into the right-of-way area for the purpose of excavating the canal and spreading the spoil. The excavated canal located on the extreme western edge of plaintiff's tract involved only a small portion of the right-of-way granted.
Upon completion of this work, and with the exception of a small amount of maintenance work performed immediately adjacent to and within the banks of the canal itself, all surveying, clearing, snagging and excavation ceased. All machinery and equipment were then removed from the right-of-way. Since 1951, the defendant has done nothing further to exercise the rights granted in the right-of-way agreement other than to use the canal proper as a gravity drainage facility since that time.
In my view, the broad grant to use "All or any part" of plaintiff's property "for any purpose with, or connected with construction or excavation of canals or ditches" was a servitude affecting the entire surveyed area of the right-of-way for the purpose of "construction and excavation of canals and ditches," etc. However, once the excavation was completed in 1951, the ten-year-prescription of nonuser began to run on the area outside the limits of the canal, for the remainder of the property, not being used for the purposes contemplated by the grant, became subject to the liberative prescription of Article 798. That is to say, defendants, in the words of Articles 798, "enjoyed a right less extensive than is given him by title." Thus, "the servitude, whatever be its nature, is reduced to that which is preserved by possession during the time necessary to establish prescription."
*501 If we accept the majority view that the grant created a continuous, apparent servitude of drain, it does not follow that it was exercised immediately. It became effective as of the date the canal was excavated and put to use; this was the date of the apparent servitude's creation or exercise. And this creation or exercise of the continuous, apparent servitude was only as to the area occupied by the excavation and the spoil. In other words, an apparent servitude is not such until it is in fact apparent. Thus as to the canal proper and the rights of defendant there, the servitude still existsit is still continuous and apparent.
Under the majority's theory, the balance of the property was in the beginning a discontinuous servitude. It continued to be such from the 1949 date of the servitude grant or title until the excavation was completed, the work ceased and the equipment was removed. At that time prescription began to run; that is, from the day the land "ceased to be used" for the purposes set forth in the title creating that servitude. La.Civil Code art. 790. Insofar as this unused portion of plaintiff's land is concerned, the ten-year-prescription of nonuser of the servitude affecting it has tolled. That part of plaintiff's land is therefore free of the servitude.
Moreover, I am of the view that a fundamental principle setting forth the methodology applicable to this decision has been overlooked by the majority. The principle is announced in Article 753 of the Civil Code: "Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected." In my view, not only has the landowner not been given the benefit of the doubt in a title (prepared by defendant), which at best is ambiguous, but the contrary has taken place.
I respectfully dissent.
NOTES
[1] 261 So.2d 298; writ granted, 262 La. 301, 263 So.2d 44.
[2] If I enjoy a right more extensive than that which is granted me by my title, if I have used (or done) more than I am permitted, I have, in every case, preserved my right; the lesser is included in the greater. But, I cannot prescribe for the surplus, and I can always be compelled to reduce the use of the servitude, conformably to the title, unless it be a continual and apparent servitude, prescriptible without title. If I have enjoyed a right less extensive than my title, the servitude, whatever be its nature, is reduced to that which is preserved through use, during the time necessary to establish prescription. (3 Tul. No. 700, translation).
[1] Jumonville Pipe and Machinery Co. v. Federal Land Bank, 230 La. 41, 87 So.2d 721 (1956); Childs v. Washington, 229 La. 869, 87 So.2d 111 (1956); Elson v. Mathewes, 224 La. 417, 69 So. 2d 734 (1954). See Daggett, Brief Comments and Speculation re Elson v. Mathews, 14 La.L.Rev. 547 (1954). See Trunkline Gas Co. v. Steen, 249 La. 520, 187 So.2d 720 (1966) dissent.