303 So.2d 588 (1974)
Lynn HYMEL et al.
v.
ST. JOHN THE BAPTIST PARISH SCHOOL BOARD.
No. 6386.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1974.
Rehearing Denied December 10, 1974.
Writ Refused January 31, 1975.
*589 Becnel & Kliebert, Charles S. Becnel and Larry Becnel, Vacherie, for plaintiffs-appellants.
Roland J. St. Martin, La Place, for defendant-appellee.
Before STOULIG, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiffs instituted these injunction proceedings to prevent defendant from interfering with their use of a right-of-way. In answer defendant denied it impeded the use of the servitude. After trial plaintiffs were awarded a judgment for only part of the relief they sought and they have appealed.
Plaintiffs are the owners of a tract of ground in St. John the Baptist Parish. This tract which they cultivate as sugar cane farmers is directly to the rear of a smaller tract owned by defendant which has constructed and is operating a public school on the tract. Plaintiffs and defendant derive their respective titles from a *590 common ancestor in title, Willie Hymel. When Willie Hymel sold the smaller tract to the defendant in 1963, he reserved a servitude in the following words:
"There is hereby reserved by vendor for himself, his heirs, successors, and assigns, a right of way 25 feet in width along the westerly line of the above property to afford ingress and egress in favor of the property situated south of the herein conveyed property."
The Succession of Willie Hymel later sold to plaintiffs the rear tract together with the servitude.
A surveyor employed to examine the situation noted on a plot of survey the location, dimensions and elevations of various encroachments on the right-of-way. They consisted of a chain-link fence across the width of the servitude in the front, an overhang of the school roof, encroaching on the right-of-way by 1.7 feet in the front and increasing to 2.9 feet in the rear for a distance of 70 feet and at a height of 9.5 feet above ground level; three drop inlets, extending from 2 inches above the natural ground to 11 inches above, all connected will an underground drainage pipe on the east side of the right-of-way near the school building and on the west side a drainage ditch 3 feet wide and 3 feet deep extending entirely along the length of the property line, located entirely within the right-of-way and 1 foot inside the line. Other testimony established that school automobiles were regularly parked on the front portion of the right-of-way.
Plaintiff, Lynn Hymel, testified that the right-of-way is not used constantly but is used to some extent; that the amount of use fluctuates with the various agricultural seasons, such as planting time, cultivation time and harvest time; that the vehicles using the passage are cane cutters, about 13 feet in height and 10 feet in width, cane haulers or trailers about the same size and tractors of various sizes including one used as a three row tractor with draw boards and having a width of at least 20 feet; that all of the right-of-way is necessary for plaintiffs' use; and that various obstacles in the right-of-way prevent two of his vehicles from passing abreast on the servitude from the front of the school building to the rear.
The trial court, recognizing plaintiffs' right-of-way, permanently enjoined defendant from interfering with plaintiffs' peaceful use of it as follows:
"(a) The barrier fence across the entire right of way is to be removed.
(b) The parking of vehicles on and across said right of way is to cease and said vehicles are to be parked elsewhere.
(c) The building overhang is to remain as is and defendant school board is not required to remove same, provided that said plaintiff shall have no interference and peaceful use of said right of way subject to said use bearing in mind that the safety of the school children shall be accorded by plaintiffs in the use of said right of way and specifically at no time shall two vehicles, namely, canecutters pass side by side.
(d) That in accordance with (c) supra the defendant school board is to abandon (by covering up) or remove and cover up said drainage devices currently in use or on said right of way with an end in view to separate defendants property from the right of way with a small ditch or swale in order to afford drainage.
(e) Furthermore, it is ordered adjudged and decreed that the defendant school board strongly consider the installation of a fence separating their property from the right of way in question in order to afford a workable solution with plaintiffs use of their right of way and to afford the maximum degree of safety to the school children.
Each party is to bear his own respective court costs."
Plaintiffs appeal from sub-section (c) and (d) of this judgment and from that *591 portion taxing costs. They specify errors in that the trial judge did not order the removal of the overhang, in that he exceeded his authority in enjoining them from using the right of way as they see fit, and in not taxing court costs, including the expert witnesses' fee against the defendant.
In denying plaintiffs' prayer that defendant be ordered to remove the overhang the trial judge gave the following reasons:
"As far as the building overhang, it is not of such a degree that would warrant removal. The evidence preponderates that said right of way can be used without same impeding said use. The court will not order the overhand removed. To do so would cast an unreasonable burden upon a situation of which the free use of the servitude can be hand without forcing removal of the overhang."
Our discussion of the problem begins with LSA-C.C. Art. 777 which provides:
"The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
"Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
"Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it."
Defendant contends that under this article plaintiffs have the burden to prove that the overhang has diminished the use of the servitude or made it more inconvenient and that they failed to carry this burden. Defendant relies on evidence which demonstrated that the servitude was used only sparingly and at particular times of the year for the passage of agricultural vehicles and that with the removal of the other impediments, plaintiffs will experience no difficulty whatsoever in the passage of their equipment through the right-of-way. While it may be that two of the larger vehicles may not pass abreast of each other in the area where the school building is located, the testimony is that there is never an occasion when two such vehicles must pass abreast because the servitude is so sparingly used.
On the basis of these facts and the rationale in Kaffie v. Pioneer Bank & Trust Company, 184 So.2d 595 (La.App.2nd Cir. 1965), Appeal after Remand 204 So.2d 54 (1967), Writ Refused, 205 So.2d 605 (1968), defendant contends that a result in its favor is clearly indicated. We do not agree and hold that the trial court erred in this part of his judgment.
When the right-of-way "is the result of a contract, its extent ..... is regulated by the contract." C.C. Art. 722. It is only where the contract does not designate the width of the right-of-way that its extent is subject to interpretation based upon previous use of the servitude. C.C. Art. 780. Pursuant to these articles there could hardly be any doubt that plaintiffs are entitled to clear passage at ground level for the full width of 25 feet. Nor is there a sound basis for a distinction as to encroachments above ground level.
While the Civil Code provides that ownership of the soil carries with it ownership of all that is directly above it, Art. 505, we have no codal authority for the proposition that a right of passage or right-of-way confers the right to all that is above the soil. It seems that Art. 722 in defining right-of-way as a servitude by virtue of which one has the right to pass on foot or in a vehicle or to drive beasts or carts through the estate of another implies that the right-of-way does include something *592 above ground level, at least sufficient to accommodate such things as carts and vehicles.
The expressed purpose of the right-of-way in this case was to provide plaintiffs' ancestor with ingress to and egress from the property to the rear of defendant's property. The uncontroverted evidence is to the effect that plaintiffs' property was always used for sugar cane production and that plaintiffs' sugar cane cutter and their trailer used for hauling the cane are 13 feet high. These are precisely the vehicles and cart spoken of in C.C. Art. 722. Plaintiffs' ancestor reserved a 25 foot right-of-way to accommodate his equipment and they are now being made to suffer a reduction of their right-of-way. Surely this is a clear cut violation of the spirit if not the letter of the law embodied in the Codal Articles cited.
The trial court's reasoning that the overhang "is not of such a degree that would warrant removal" is not consistent with C. C. Art. 777 which provides that the owner "can do nothing tending to diminish" the servitude's use. The word "tend" means to move or extend in a certain direction or to be disposed or inclined. It cannot be said that defendant's construction of their overhand well below the height of plaintiffs' equipment is not even inclined to diminish plaintiffs' use of the servitude, when as a fact plaintiffs are prevented from using from 6.8% of the right-of-way on one end of the overhang to 11.6% on the other end for a distance of 70 feet.
We therefore conclude that there is no basis for permitting defendant to construct any obstacles within the 25 foot roadway at such height which might impede the passage of any equipment regardless of its height, and plaintiffs are entitled to an order to defendant to remove the encroaching overhang.
As to the remainder of paragraph (c) of the judgment, it limits the plaintiffs in the use of the right-of-way by requiring that it cannot be used in any way detrimental to the safety of the school children and specifically at no time shall two vehicles, namely cane cutters, pass side by side. There was no issue raised herein that plaintiffs were using the servitude in any manner which may create a hazard to the school children. As a matter of fact, their testimony evidences the reverse situation. Plaintiffs, being fearful that they may in some fashion damage either the school board property and presumably thus endanger the children, have hesitated to use the property in full, and have been using other means of egress and ingress to their farmlands because of these considerations. Although we appreciate the concern of the trial judge, we believe the inclusion of the vague restriction of use without regard to safety of the school children goes beyond the pleadings and the issues of this case. Likewise, the restriction against two vehicles passing side by side has no basis in the pleadings or the evidence. Even so it would be inconsistent with the nature of plaintiffs' right-of-way to impose limitation on its use not found in the contract which created it.
Finally, the trial judge's concern that defendant's removal of the overhang would be "an unreasonable burden" is not supported by any evidence as to the scope or cost of such work.
Accordingly, the judgment appealed from will be amended so as to delete the entirety of paragraph (c) and to order defendant to remove that part of the overhang of its building which encroaches upon plaintiffs' right-of-way.
While plaintiffs appealed from paragraph (d) of the judgment they specify no error in this connection and we are unable to perceive any inconvenience or harm suffered by plaintiffs from that portion of the judgment.
The last error assigned is that the trial court cast each party for his respective court costs, instead of casting defendant *593 for all court costs, including the expert fees. While the trial judge is vested with authority to assess court costs in such manner as he deems equitable, LSA-C.C.P. Art. 1920, his decision must have been influenced by the fact that he afforded plaintiff only partial relief. In view of our decision and our authority under C.C. P. Art. 2164 we have concluded that defendant should pay all costs including the fee of plaintiffs' expert.
Accordingly, paragraph (c) of the judgment appealed from is reversed and there is judgment in favor of plaintiffs, ordering defendant, St. John the Baptist Parish School Board, to remove that portion of the overhang of its building which encroaches upon plaintiffs' right-of-way. Paragraph (d) of the judgment is affirmed and all other respects the judgment is affirmed, except that all costs including the fee of plaintiffs' expert and the costs of this appeal are to be taxed against defendant.
Reversed in part, affirmed in part.
BOUTALL, J., dissents with written reasons.
BOUTALL, Judge (dissenting in part).
I dissent from that portion of the opinion requiring the School Board to remove its roof overhang.
The rights of an owner of a rural servitude of passage are not the same as an owner of the real estate. LSA-C.C. Art. 722 provides as follows:
"Art. 722. The right of passage, or of way, is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, on horseback, or in a vehicle, to drive beasts of burden or carts through the estate of another.
"When this servitude results from the law, the exercise of it is confined to the wants of the person who has it.
"When it is the result of a contract, its extent and the mode of using it is regulated by the contract."
The servitude in this case is established by a contract which designates its breadth but not the manner in which it is to be used. LSA-C.C. Art. 780 provides as follows:
"Art. 780. If the title by which a passage is granted does not designate its breath, nor the manner in which it is to be used, whether on foot, or horseback, or with carriages, the use which the person to whom the servitude is granted previously made of it will serve to interpret the title.
"If there was no such use made of it before, the probable intention of the parties must be considered, and the purpose for which the passage is granted.
"If these circumstances can afford no light, it must be decided in favor of the land which owes the servitude, and a foot passage must be conceded eight feet wide, where it is straight, and ten feet wide where it turns."
LSA-C.C. Art. 777 provides as follows:
"Art. 777. The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
"Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
"Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it."
*594 In considering the application of these articles it is apparent that our courts have been using a factual approach, where the contract is silent, to determine whether an encroachment into the area of the servitude diminishes its use or makes its use more inconvenient. See for example Kaffie v. Pioneer Bank & Trust Co., 184 So.2d 595 (La.App.2d Cir. 1965), appeal after remand, 204 So.2d 54 (1967), Writs refused, 205 So.2d 605 (1968) wherein an overhang 8½ feet high was determined to violate the servitude, but an overhang 12½ feet high in the same area was not. Similarly, in Nelson v. Warren, 157 So.2d 762 (La. App.2d Cir. 1963) a fence was ordered removed but a carport was not.
In the present case, the servitude was used only occasionally, and the trial court found as a fact that the right of way can be used without the overhang impeding its use. The record supports this finding. The trial court concluded that to order the overhang removed "would cast an unreasonable burden upon a situation of which the free use of the servitude can be had without forcing removal of the overhang." I agree with this conclusion and therefore respectfully dissent.