406 So.2d 294 (1981)
RED RIVER, Atchafalaya and Bayou Boeuf Levee District, Plaintiff-Appellee,
v.
Rodney V. NOLES, Defendant-Appellant.
No. 8456.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
*295 Trimble, Randow, Smith & Wilson, Lon P. Wilson, Alexandria, for defendant-appellant.
Gus Voltz, Jr., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, SWIFT and YELVERTON, JJ.
YELVERTON, Judge.
Plaintiff-appellee, Red River, Atchafalaya and Bayou Boeuf Levee District (Levee District) obtained a mandatory preliminary injunction ordering defendant-appellant, Rodney V. Noles (Noles) to remove buildings and construction on the right-of-way, or servitude, of the Levee District. Noles suspensively appealed. We affirm.
The Levee District obtained a conventional servitude in 1951 from Frank E. McNutt, then the owner, over three and a half acres of land located in Rapides Parish, for the purpose of constructing the Bayou Boeuf-Cocodrie Diversion Canal. The right-of-way provides for "the right to use all or any part of the property for any purpose with, or connected with construction or excavation of canals or ditches, storage or placement of spoil or spoil dirt, storage or placement of any and all machinery and/or equipment, irrigation, storage or impounding of water, levee construction or relocation and flood control or anything incidental thereto". Pursuant to this acquisition, the Levee District constructed the Bayou Boeuf-Cocodrie Diversion Canal which it presently maintains.
Subsequent to this grant the ownership of the three and a half acres changed hands. In 1974 the Levee District and the new owner entered into an agreement whereby the right-of-way or servitude was reduced in size extending outward 150 feet from the top bank of the existing canal.
Noles, the present owner of the property, purchased same in June of 1979 burdened with the 150 foot servitude. Noles or his predecessors in title caused to be erected, entirely within the 150 foot right-of-way, a metal building on a concrete slab, for use as a barn. The rear of the building is situated 56 feet from the outer edge of the right-of-way and 94 feet from the top bank of the existing canal.
*296 When all other efforts to obtain the removal of the building failed, the Levee Board filed a suit alleging that the erection and maintenance of the building makes the use of the servitude more burdensome and that it makes it impossible for it to exercise the full rights of its servitude. The suit asked for a mandatory injunction requiring the removal of the structure and an injunction prohibiting the erection of any other structure in the right-of-way over Noles' property.
The application for a preliminary injunction was filed February 13, 1981. The hearing was scheduled for February 23, 1981, at which time the matter was given a full hearing and proof was taken as in ordinary cases. After taking the matter under advisement for briefs, the trial court granted a mandatory preliminary injunction, ordering the removal of all buildings or construction on the right-of-way.
Noles contends on this appeal that the trial court erred in issuing a mandatory preliminary injunction (1) without proof that the use of the servitude had been made more burdensome by the location of the building; (2) without a showing of irreparable harm or injury; and (3) on a mere prima facie showing. We will now address ourselves to these three issues.
I. DOES THE BUILDING DIMINISH THE SERVITUDE?
The trial court based its granting of the injunction on Louisiana Civil Code Article 748 and on the authority of Hymel v. St. John the Baptist School Board, 303 So.2d 588 (La.App. 4th Cir. 1974), writ refused, 307 So.2d 370 (1975); and Kaffie v. Pioneer Bank and Trust Company, 184 So.2d 595 (La.App. 2nd Cir. 1965), aff'd on rehearing, 204 So.2d 54 (La.App. 2nd Cir. 1967), writ refused, 251 La. 685, 205 So.2d 605 (1968). Civil Code art. 748 states in pertinent part:
"The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude."
The two cases cited supra, Hymel and Kaffie, both required the removal of permanent structures which made the use of rights-of-way more inconvenient. Both cases cited former Civil Code art. 777 as authority for the mandatory injunctions. The above quoted portion of present Civil Code art. 748 tracks substantially the language of former art. 777.
It is evident, as pointed out by the trial judge, that the existence of a permanent building on the right-of-way tends to diminish or make more inconvenient the use of the servitude. Chester D. Wells, a member of the Board of Commissioners of the Levee District and its President, testified that the Levee District is responsible for maintenance of Bayou Boeuf-Cocodrie Diversion Canal which had been built by the U. S. Corps of Engineers, and that the Levee District actively maintains the canal. He described its maintenance as the removal of silt, trees, limbs and debris that might accumulate in the canal and obstruct drainage, including spraying trees to deaden vegetation which might give problems with drainage.
Obviously, space is required for the free movement of vehicular traffic needed to accomplish this maintenance. The largest piece of equipment presently owned and used by the District is a dragline which itself requires 60 feet from the top bank for its operation. Additionally, Noles testified that there are studies underway financed by a Federal appropriation looking to the eventual deepening and widening of the 61 mile long canal.
Noles contends that the testimony of Wells not only fails to prove that the location of the building makes the use of the servitude more burdensome, but that this testimony actually establishes that the building does not diminish the servitude or make its use more inconvenient. We reject this contention. We agree with the finding of the trial judge that the presence of the permanent building wholly within the right-of-way constitutes an obstruction which diminishes the servitude and makes its use more inconvenient.
*297 However, we do not rest our decision merely on the finding that the area of the servitude is actually needed to carry out the functions of the Levee District and the purposes listed in the servitude agreement. The physical area needed to carry out these functions is not open to speculation. When the right-of-way is the result of a contract, its extent is regulated by the contract. Hymel v. St. John the Baptist Parish School Board, supra. Louisiana Civil Code Article 705[1] provides that for a servitude of passage, the extent of the right is determined by the extent necessary for the reasonable use of the dominant estate unless the title provides otherwise. The affirmative servitude of drain in this case, while arguably more extensive than that contemplated by Article 705 ("extent necessary for the reasonable use of the dominant estate"), is analogous to a servitude of passage in that it provides an area of a certain width for the owner of the dominant estate to do a certain thing on the servient estate. Civil Code Article 749[2] can be likened to Article 705 in that it provides that the intention of the parties is to be inferred from the purpose of the servitude only if the title is silent as to the extent and manner of use of the servitude. Thus, reasoning a contrario sensu from Articles 705 and 749, when the title provides the exact dimensions of the area affected by the servitude, that contract must be given full effect. The owner of the servient estate may not, by unilateral action, effectively take over unused areas of the servitude by establishing thereon permanent structures. See also Armstrong v. Red River, Atchafalaya and Bayou Boeuf Levee Board, 278 So.2d 496 (La.1973).
In this case, there is no dispute that the title provides for a servitude consisting of an area 150 feet from the top bank of the canal and that Noles' building lies within that area. Therefore, since the terms of the contract govern the extent of the servitude, Noles cannot justify his infringement by saying that his building does not prevent the use of the right-of-way by the dominant estate.
The case which Noles cites in support of his position is distinguishable from the case before us. The First Circuit in South Central Bell Telephone Company v. Dempster, 303 So.2d 280 (La.App. 1st Cir. 1973) upheld the trial court's ruling that a mandatory injunction should not issue to remove an object which, even though located on the servitude, is not shown to interfere with or obstruct the use thereof. It is not clear from the opinion whether the extent of the servitude in Dempster was regulated by contract or not. In any case, however, it is evident that Noles' building would interfere with the exercise by the Levee District of its servitude. Since the Levee District has a right by contract to exercise its servitude on all or any part of the area bargained for, a mandatory preliminary injunction to remove obstructions to this right of use is appropriate.
II. MUST THE LEVEE DISTRICT SHOW IRREPARABLE HARM?
Pursuant to this assignment of error, Noles contends that it was improper for the trial court to issue a preliminary injunction without a showing of irreparable harm or injury. We find that it was unnecessary for the Levee District to make a showing of irreparable harm or injury in order to obtain a preliminary injunction to protect a servitude.
The usual statutory ground for the issuance of an injunction is Code of Civil Procedure art. 3601 which does require a showing of irreparable injury, loss, or damage.
*298 However, this article itself contains a provision recognizing the existence of grounds for injunctive relief which do not require the parties seeking the injunction to show evidence of irreparable injury. Article 3601 provides in part:
"An injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law;..."
We had occasion in Chapman v. Fisher, 370 So.2d 162 (La.App. 3rd Cir. 1979) to construe the above quoted language from Article 3601, and we said:
"This provision authorizes an injunction in two separate instances: First, where the applicant suffers some irreparable injury, and second, in any other case where an injunction is specifically provided as the appropriate remedy. From a clear reading of this article's language an applicant does not need to establish irreparable injury if the law specifically affords him the remedy of an injunction."
An injunction to protect a servitude is authorized under Code of Civil Procedure art. 3663[3]. Section 2 of that article makes injunctive relief available to a person disturbed in the possession or enjoyment of a real right which he and his ancestors in title have had for more than a year. When injunctive relief is sought on this ground, there is no requirement for a showing of irreparable harm. Patin v. Richard, 357 So.2d 1285 (La.App. 3rd Cir. 1978); Elliott v. Louisiana Intrastate Gas Corporation, 336 So.2d 925 (La.App. 3rd Cir. 1976); Indian Bayou Hunting Club, Inc. v. Taylor, 261 So.2d 669 (La.App. 3rd Cir. 1972) on rehearing; Yiannopoulos, Civil Law Treatise, Vol. 2 on Property, § 229 at p. 612 (1980).
III. WAS THE MANDATORY INJUNCTION ISSUED ON A MERE PRIMA FACIE SHOWING?
Finally, Noles contends that the trial judge erred in issuing a mandatory injunction on a prima facie showing. In oral argument before this court, counsel for defendant clarified this contention by explaining that what was intended was an objection to the issuance of a mandatory injunction on a preliminary injunction hearing. Noles cites the case of Black v. Good Intent Towboat Company, 31 La.Ann. 497 (1879) to support the proposition. The Supreme Court in that case recognized that a mandatory injunction could issue to protect a real right but the question before it was "should a mandatory injunction issue upon a preliminary motion or application"? The court said:
"The writ of injunction will issue on the ex parte application of the complainant only in its prohibitory form, and in cases where the only purpose to be accomplished is to restrain or prohibit something from being done. But in its mandatory form, when it commands the doing of something, it cannot be issued until a hearing on the merits, or when, a prohibiting writ having issued restraining a party from obstructing the exercise of a right, the obstruction may be commanded to be removed, because its continuance effects the very injury he was prohibited from effecting."
Elsewhere in the opinion the court addresses the same issue by declaring that it is unlawful to issue a mandatory injunction before "a trial upon the issues of the controversy".
Our present law relating to injunctions is based largely on Act 29 of 1924. Prior to 1924, a preliminary injunction issued without *299 notice or hearing, simply on an ex parte application. One of the purposes of Act 29 of 1924 was to prohibit this practice. See 26 La.Bar Assn. Rep. 15, reprinted in part in 2 McMahon La.Practice 1280. The Black decision supra, and two other early Louisiana Supreme Court decisions which will be discussed in the next two paragraphs, had already condemned the practice of issuing a mandatory injunction on an ex parte application, even before the passage of Act 29 of 1924.
In Board of Commissioners of Petite Anse Drainage District v. Iberia and Vermilion R. Company, 117 La. 940, 42 So. 433 (1906), the court quoted the above language from the Black decision and held simply that a mandatory injunction may not issue on an ex parte application.
The Supreme Court again considered the subject in 1923, in the case of Broussard v. Cormier, 154 La. 877, 98 So. 403. The plaintiff in that case, seeking to remove an obstruction to a real right, obtained a mandatory injunction on a hearing on a rule nisi (rule to show cause). Whether the trial judge was empowered to issue a mandatory injunction after a hearing on a rule to show cause was an issue on appeal. The Supreme Court stated:
"We think the ruling of the court was correct. The general rule is that an injunction will issue only in its prohibitory form, but when a defendant obstructs a plaintiff in the enjoyment of a real right, as by fencing a common passageway or building a levee across a drainage course, the latter is entitled to a prohibitory injunction restraining the disturbance and to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done. State ex rel Yale v. Judge, 41 La.Ann. 516, 6 So. 512; Black v. Towboat Co., 31 La.Ann. 497; V. S. & P. Ry. Co. v. Webster Sand & Gravel Co., 132 La. 1051, 62 So. 140, 47 L.R.A. (N.S.) 1155.
"Such an injunction however, should never issue ex parte, but only after hearing either on rule or on the merits. It was not issued in this case until the defendant was notified and had his day in court."
After the enactment of Act 29 of 1924, which required notice and a hearing as a prerequisite to the issuance of a preliminary injunction, the Supreme Court decided the case of Town of Leesville v. Kapotsky, 168 La. 342, 122 So. 59 (1929). It reaffirmed the rule explained in Broussard v. Cormier, supra, saying:
"Such injunction [mandatory], however, should never be granted ex parte, but only after hearing either on rule or on the merits."
The most recent case to cite Black v. Good Intent Towboat Co., supra, on which appellant relies, is Gamburg v. City of Alexandria, 85 So.2d 276 (La.App. 2nd Cir. 1956). In that case the right to a mandatory injunction for the removal of an obstruction to a real right was extensively documented. The court also cited cases including Broussard v. Cormier, supra, which it interpreted as establishing a general rule that a mandatory injunction should not issue save after a hearing on the merits of the case or in aid of the enforcement of a prohibitory injunction which has already been issued. The trial judge in Gamburg had refused to grant an injunction. The Second Circuit reversed, finding on the facts in the record, as developed at the hearing conducted at the trial level, that a mandatory injunction should have been granted. It appears implicit in the opinion of the Second Circuit that the hearing below was on a preliminary injunction. The Second Circuit found, however, as a matter of fact that the matter was dealt with at the trial level as being on the merits. The Court accordingly reversed the trial judge and granted the complainant the mandatory injunction he sought.
In the case before us, the matter was fully heard on the rule to show cause issued pursuant to the petition for a mandatory injunction. The plaintiff opened and closed the trial as in an ordinary proceeding. The hearing was dealt with as a trial on the merits, without any objection by defendant.
Code of Civil Procedure art. 3609 allows the court to limit the evidence presented at the hearing for a preliminary *300 injunction to verified pleadings or supporting affidavits, but the court must do so in writing, and a copy of the order must be served upon the defendant.[4] No such order was issued by the trial court in this case. The evidence heard at the hearing was not limited and both sides presented testimony from witnesses. The record before us shows that the trial court permitted the parties a full hearing on all the issues in controversy. There is nothing in the record to indicate that either party was disadvantaged in the production of evidence or that the defendant was prejudiced by the fact that the trial was held only 10 days following the filing of the petition.
Under these circumstances, we hold that the mandatory preliminary injunction requiring Rodney V. Noles to remove his building from the right-of-way was properly issued by the trial court.
For these reasons, the judgment of the trial court is affirmed. The costs of this appeal are to be paid by defendant-appellant.
AFFIRMED.
NOTES
[1] "Art. 705. Servitude of passage. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate."
[2] "Art. 749. Extent and manner of use of servitude when title is silent. If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose."
[3] "Art. 3663. Sequestration; injunctive relief. Sequestration of immovable property or of a real right involved in a possessory or petitory action during the pendency thereof is available under the applicable provisions of Chapter 1 of Title I of Book VII.

"Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right, is available to:
"(1) A plaintiff in a possessory action, during the pendency thereof; and
"(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment."
[4] The pertinent part of Code of Civil Procedure art. 3609 reads:

"The court may hear an application for a preliminary injunction or for the dissolution or modification of a temporary restraining order or a preliminary injunction upon the verified pleadings or supporting affidavits, or may take proof as in ordinary cases. If the application is to be heard upon affidavits, the court shall so order in writing, and a copy of the order shall be served upon the defendant at the time the notice of hearing is served."