324 So.2d 517 (1975)
James PICARD
v.
Raymon J. SHAUBHUT.
No. 10479.
Court of Appeal of Louisiana, First Circuit.
November 24, 1975.
Rehearing Denied January 12, 1976.
Writ Refused February 17, 1976.
*518 John L. Goldsmith, Gonzales, for appellant.
Karl Cavanaugh, Denham Springs, for appellee.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
LOTTINGER, Judge.
This is a suit by petitioner, James Picard, against the defendant, Raymon J. Shaubhut, wherein petitioner seeks a declaratory judgment in his favor declaring that a servitude of passage exists on the lands of defendant in accordance with the terms of a Partition Deed dated October 8, *519 1949, and, in the alternative, declaring his property to be without access and granting him a servitude of passage across the property of defendant in accordance with the provisions of LSA-C.C. art. 701. The Trial Court awarded judgment in favor of defendant and dismissed petitioner's demand; petitioner has appealed.
This matter was submitted to the Trial Court on a stipulation of facts. Petitioner acquired his tract of land from Ervin Aydell by Act of Sale dated February 21, 1972. Ervin Aydell had acquired his property from Alphonse Aydell on May 18, 1950, and Alphonse Aydell had acquired the property in a partition with his former wife, Armethea Aydell, on October 8, 1949.
The tract of land belonging to the defendant, Raymon J. Shaubhut, was acquired from Hymel Fontenot, who had acquired it from Armethea Aydell on August 18, 1958. Armethea Aydell had acquired the property in the October, 1949, partition. It was in the Act of Partition between Alphonse Aydell and Armethea Aydell, that a twenty-two foot wide right of way or servitude of passage was granted in favor of the tract of land acquired by Alphonse Aydell over that portion of the tract of land granted to Armethea Aydell.
It was stipulated that several witnesses if called would each testify that they had lived, or owned property, in the vicinity of the Shaubhut tract, one who was still living adjacent to the right of way, for many years, and were very familiar with the twenty-two foot wide lane in question. Each of these witnesses would have testified that to the best of their knowledge the lane had not been used for some twenty to thirty years prior to the petitioner's use or attempted use thereof.
With regard to the alternative demand, the stipulation of facts submitted provides as follows:
"In regard to plaintiff's alternative demand, plaintiff James Picard would testify and the testimony of Maurice Aydell, James E. Brignac, Ellis Berthelot, and Bertin [sic] Aydell would be substantially the same and it is stipulated that the property of Alphonse Aydell had access only to the Maurice Aydell Road until recently when there was purchased access to Highway 42. The distance from the property of plaintiff to Maurice Aydell Road is just 1,000 feet, whereas the distance through the newly acquired access is approximately 2,500 feet. It is stipulated that a direct line distance from the property of plaintiff to Hwy. 42 would be approximately equal to the distance to the Maurice Aydell Road, but would be in its entirety across property other than his ancestor in title."
Both the tract of land owned by the petitioner and the tract of land owned by the defendant were at one point both part of the same parent tract, being owned by Alphonse Aydell and his wife, Armethea Aydell. A partition of this common tract took place on October 8, 1949. With the Act of Partition, the tract of land granted to Alphonse Aydell became enclosed, by the partition itself, and shut off from access to a public road, railroad, or tramroad. LSA-C.C. art. 701 provides:
"It is not always the owner of the land which affords the shortest passage who is obliged to suffer the right of passage; for if the estate, for which the right of passage is claimed, has become inclosed by means of sale, exchange or partition, the vendor, coparcener or other owner of the land reserved, and upon which the right of passage was before exercised, is bound to furnish the purchaser or owner of the land inclosed with a passage gratuitously, and even when it has not been sold or transferred with the rights of servitude." [Emphasis added]
Therefore, the tract of land acquired through the partition by Armethea Aydell owed a servitude of passage to the tract of land granted to Alphonse Aydell.
*520 Was the language in the Act of Partition between Armethea Aydell and Alphonse Aydell the expression of the establishment of a conventional or voluntary right of way or servitude of passage, or was it merely a recognition and designation of the right of way and servitude of passage imposed by LSA-C.C. art. 701? The language in the Act of Partition is as follows, to-wit:
"It is specifically understood and made a part of this partition that the said Mrs. Armethea Aydell does hereby grant unto the said Alphonse Aydell a right of way and passage on and over the land described in No. 2 above [one of the two tracts granted to Mrs. Armethea Aydell in the partition] as follows: Starting at the intersection of Burlin Aydell land north line with Maurice Aydell Road, thence in a Westerly direction toward the Alphonse Aydell land along the boundary between Burlin Aydell and Mrs. Armethea Aydell, and thence on to the East boundary line of Alphonse Aydell land, the said right-of-way to be 22 feet in width, and all rights and advantages pertaining to rights-of-way and with full and general title to same and to adhere to himself and heirs and assigns forever."
Does the inclusion of language defining a right of way or servitude of passage in an act of partition, where one tract owes the other tract a legal servitude of passage, create a conventional or voluntary servitude, or merely recognize and designate the existing legal servitude? Our brethren on the Fourth Circuit in Arcuri v. Cali, 244 So.2d 309 (La.App.4th Cir. 1971) held that where the plaintiff was not entitled to a legal servitude under LSA-C.C. arts. 699 and 701 or LSA-R.S. 48:731 et seq., that any language in the Act of Sale making reference to a servitude was the establishment of a conventional servitude rather than the recognition of a legal servitude. That, however, is not the situation before this Court, because at the time of the Act of Partition, the tract granted to Armethea Aydell did owe a legal servitude of passage and of way to the tract granted to Alphonse Aydell. LSA-C.C. art. 701. Therefore, we are of the opinion that the language in the Act of Partition, rather than creating a servitude of passage by agreement of the parties, simply recognized and designated that servitude of passage which the Alphonse Aydell tract, as the dominate estate, had over and across the Armethea Aydell tract, as the servient estate.
Since we have reached the conclusion that the language in the Act of Partition was merely the recognition of a legal servitude, is that servitude of passage prescriptible because of non-use?
In attempting to determine the meaning of any article or articles as found in the Louisiana Civil Code, we must first realize and understand that the redactors of the Louisiana Civil Code of 1870, as well as prior Civil Codes, divided, sub-divided and further sub-divided the articles of the Civil Code into books, titles, chapters, sections, and lastly the articles themselves. The discussion of servitudes in the Civil Code of 1870 is found in Book II, entitled "OF THINGS, AND OF THE DIFFERENT MODIFICATIONS OF OWNERSHIP." Book II is sub-divided into six titles, one of which is Title 4, "Of Predial Servitudes Or Servitudes Of Land."Title 4 is further sub-divided into four chapters, to-wit: Chapter 1, "General Principles"; Chapter 2, "Of Servitudes Which Originate From The Natural Situation Of The Places"; Chapter 3, "Servitudes Imposed By Law"; and Chapter 4, "Of Conventional Or Voluntary Servitudes."
In Chapter 2, "Of Servitudes Which Originate From The Natural Situation Of The Places", there are only four code articles i.e. Art. 660, natural drainage; Art. 661, running water; Art. 662, right of a proprietor to make an enclosure around his estate; and Art. 663, right to compel neighbors to fix and mark boundaries.
*521 Next is Chapter 3, "Of Servitudes Imposed By Law." This chapter contains Art. 664 through and including Art. 708. It discusses the shores of navigable rivers, levees, roads and common works, Art. 665; that one can do what he wants on his own land as long as it does not deprive his neighbor of the enjoyment of his land, though it may inconvenience him, Arts. 667 and 668, though the inconvenience rule would not apply to smoke or smell, Art. 669; that one must not allow his buildings to fall to ruin so as to cause damage to another, Art. 670, and that in the meantime; the neighbor is authorized to make necessary repairs, Art. 671; that city councils can make rules as to the pulling down of buildings in case of fire, Art. 672; and that where one builds either above or below his property, it must be perpendicular, Art. 673.
The last article, LSA-C.C. art. 674, lists the other particular servitudes imposed by law, to-wit:
"1. To boundary walls, enclosures and ditches; [LSA-C.C. arts. 675-691]
"2. To cases where it is necessary to have double or counter walls; [LSA-C.C. arts. 692-695]
"3. To the right of lights and of view on the property of a neighbor; [LSA-C.C. arts. 969 and 697]
"4. To carry off water from roofs; [LSA-C.C. art. 698]
"5. To the right of passage and of way." [LSA-C.C. arts. 699-708]
Section 5 of Chapter 3, Art. 699 through and including Art. 708, treats "Of The Right Of Passage And Of Way." Of importance and interest to this case are the following codal articles, to-wit:
LSA-C.C. art. 699. The owner whose estate is enclosed, and who has no way to a public road, railroad, or a tramroad may claim the right of passage on the estate of his neighbor or neighbors to the nearest public road, railroad, or a tramroad and shall have the right to construct a road, railroad or tramroad according to circumstances and as the exigencies of the case may require, over the land of his neighbor or neighbors for the purpose of getting the products of his said enclosed land to such public road or railroad tramroad or for the cultivation of his estate, but he shall be bound to indemnify his neighbor or neighbors in proportion to the damage he may occasion.
LSA-C.C. art. 700. The owner of the estate, which is surrounded by other lands, has no right to exact the right of passage from which of his neighbors he chooses.
The passage shall be generally taken on the side where the distance is the shortest from the inclosed estate to the public road.
Nevertheless, it shall be fixed in the place the least injurious to the person on whose estate the passage is granted.
LSA-C.C. art. 701. [See quotation of this article above]
LSA-C.C. art. 702. A passage must be furnished to the owner of the land surrounded by other lands, not only for himself and workmen, but for his animals, carts, instruments of agriculture, and everything which may be necessary for the use and working of his land.
LSA-C.C. art. 703. When the place for the passage is once fixed, he to whom this servitude has been granted can not change it, but he who owes this servitude may change it from one place to another, in order that it may be less inconvenient to him, provided that it afford the same facility to the owner of the servitude.
So far, we have discussed general principles of servitudes, servitudes which originate from the natural situation of the places, and servitudes imposed by law. We *522 note that in LSA-C.C. arts. 699 et seq., the servitude of passage and of way is discussed, but this is not the only area of our Civil Code that speaks of the servitude of passage.
Chapter 4 of Title IV treats of conventional or voluntary servitudes. This means, servitudes that are brought about by agreement of the parties. This Chapter is divided into five sections, to-wit: Section 1, "Of The Different Kinds Of Conventional Or Voluntary Servitudes"; Section 2, "How Servitudes Are Established"; Section 3, "How Servitudes Are Acquired"; Section 4, "Of The Rights Of The Proprietor Of The Estate To Which The Servitude Is Due"; and Section 5, "How Servitudes Are Extinguished."
In Section 1, there are three codal articles that speak of the right of passage or of way, to-wit:
LSA-C.C. art. 719. The right of passage in cities is a servitude by which an owner permits his neighbor to pass through his house or lot to arrive at his own.
This servitude to be perpetual, must be so expressed in the title; otherwise it ceases with the person who enjoys it, and does not pass to his heirs.
LSA-C.C. art. 721. The principal rural servitudes are those of passage, of way, of taking water, of the conducting of water or aqueduct, of watering, of pasturage, of burning brick or lime, and of taking earth or sand from the estate of another.
LSA-C.C. art. 722. The right of passage, or of way, is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, on horseback, or in a vehicle, to drive beasts of burden or carts through the estate of another.
When this servitude results from the law, the exercise of it is confined to the wants of the person who has it.
When it is the result of a contract, its extent and the mode of using it is regulated by the contract.
LSA-C.C. art. 727, also found in this section, classifies a servitude of passage as a discontinuous servitude.
Since we have therefore noted the servitude of passage being discussed in two separate chapters of the Civil Code, it follows that the redactors contemplated two servitudes of passage, one being a servitude imposed by law and the other being a servitude by convention or voluntary agreement.
In Section 5, entitled "How Servitudes Are Extinguished," LSA-C.C. art. 789 provides that a servitude is extinguished by the nonusage during a period of ten years, but LSA-C.C. art. 795 provides that "prescription for non-usage does not take place against Natural or necessary servitudes, which originate from the situation of places."
We have gone through this lengthy discussion of Title IV, "Of Predial Servitudes Or Servitudes Of Land" to point out how the articles of the Civil Code are divided within this Title into Chapters and then into Sections, and the subject matter covered by each.
Petitioner contends that the servitude of passage created by LSA-C.C. art. 701 is non-prescriptible according to LSA-C.C. art. 795. He argues that the servitude created by LSA-C.C. art. 701 is a necessary servitude, and thus under the language of LSA-C.C. art. 795 is non-prescriptible.
It is interesting to note that in looking at the manner in which Title IV of this Book is divided, that there is a separate chapter on servitudes which originate from the natural situation of the places, as well as a separate chapter on servitudes imposed by law, and in neither of these chapters is any mention made of prescription. It is only in Chapter 4, "Of Conventional Or Voluntary Servitudes" that we find any *523 language that speaks of how servitudes are extinguished. Secondly, in the chapter on conventional or voluntary servitudes is found LSA-C.C. art. 795 which provides that natural or necessary servitudes do not prescribe.
The question arises, are the terms Natural and Necessary synonymous. We think not. We do reason, however, that the term natural as used in LSA-C.C. art. 795 refers to those servitudes created under Chapter 2, "Of Servitudes Which Originate From The Natural Situation Of The Places," and that the term necessary has reference to those servitudes created and established by Chapter 3, "Of Servitudes Imposed by Law." If it were intended that those servitudes imposed by Chapters 2 and 3 of Title IV could be lost by prescription, then specific reference to their loss by prescription would be made either in those two chapters or specifically otherwise.
Civil Code Art. 795 first appeared in the 1825 Civil Code of Louisiana, and there was no corresponding article in the 1808 Civil Code nor in the Code Napoleon. It is interesting to note, however, that even though the French writers did not have a codal article comparable to LSA-C.C. art. 795 to discuss, they did discuss the imprescriptibility as it related to servitudes. Aubry and Rau, in Droit Civil Francais, Volume XII, §§ 770-776 bis (6 ed. 1958, by Paul Esmein) translated by the Louisiana State Law Institute, Civil Law TranslationsVolume 5, say at page 426 of the translation that:
"[12] Legal Powers.Powers inherent in ownership or derived from an assignment are by their nature imprescriptible on grounds of non-use alone."
The footnote to that statement is as follows, to-wit:
"Such is the case of the power to use running water contiguous to one's land (Art. 644) [LSA-C.C. art. 661], to cut roots, runners, shoots and branches of trees penetrating from a neighboring land (Art. 673), to demand passage to an enclosed land (Art. 682) [LSA-C.C. art.699]. Dunod, ibid,; [Baudry-] Tissier, No. 163; Civ. 25 March 1844, S. 44. 1. 602; Pardessus, I, Nos. 21, 56; Troplong, I, 112; Limoges, 2 Apr. 1846, D. 47. 2. 12; Req. 28 July 1874, S. 75. 1. 404, D. 75, 1.317 * * *."
The reference in the footnote to Baudry-Lacantinerie & Tissier, Prescription (Ed. 4, 1924, updated) Nos. 162, 163 and 165, which is also translated in the same volume at pages 93 and 94, reads as follows, to-wit:
"162. This citation can even today serve as the basis of the doctrine of imprescriptible faculties. According to Dunod, imprescriptible faculties are those which are derived from natural freedom, or which represent the exercise of an ownership right or, finally, those which the law attributes to everybody independently of any contract.
"163. These numerous faculties may not be lost by prescription because in a way they are derived from a title which is being renewed every day and which the entitled person does not have to keep in force by any active steps. Among them are the faculties to come and go, to practice a craft, to build, to plant, to excavate on one's land, to acquire the ownership of one-half of a common wall, to request the delimitation of one's field, to enclose one's property, to request passage from an enclave, to request the partition of undivided estate, the use of water flowing by, to force one's neighbor to allow passage of irrigation water or the drainage of noxious water, or to tolerate the support of a dam, to cut the branches and request the cutting of the roots of his neighbor's tree which invade his land. All these faculties are part of the general law of property; and together with it, they are not extinguished by nonuse. The same is true of the right to use public and common things. All these *524 faculties are, as Troplong called them, rights in the state of availability (droits en disponibilite). The legal facts which produce them may be subject to prescription, but the faculties themselves are not. Another person may not possess nor use them. On the other hand, their exercise can not raise a presumption of abandonment, for they are subordinated to our will, to the need of the moment. They are rights of a faculative nature in the sense that the entitled person is free to use or not to use them, without any prejudice to their existence being caused by nonuse. They are attached to a status which can not be prescribed (personal status, ownership, residence in a municipality) and they last as long as it does. They can be lost only indirectly, if a third party acquires a right which can not be reconciled with the given faculty.

* * * * * *
"165. Although the Code does not speak of imprescriptible faculties, this does not mean that they do not exist. To explain this discrepancy between fact and statute, the following arguments which do not seen to be sufficiently rigorous and exact have been suggested: not all rights are extinguished by nonuse; Arts. 1234 and 2262 envisage only obligations and choses in action; there are rights which are outside these norms and do not require the exercise of an action to be made effective; they can not be extinguished for no statutory text says so; and also, since they do not give birth to any action, they are not affected by liberative prescription.
This reasoning is not sufficient to justify the imprescriptibility of faculties. We shall see later whether it is correct to say that only rights equipped with a remedial action are subject to prescription. But we can observe right now that even such rights may be protected against prescription. We have already cited the right to acquire title to one half of a common wall, to request delimitation of land, partition; others could be added. The line of distinction must be drawn in this manner: faculties are rights which are the consequences of ownership, or are derived directly from statute, without depending on any contractual agreement; whereas rights proper are constituted by human will. Faculties may not involve the exercise of any action and yet not be susceptible of prescriptive extinction, for the title on which they depend is, so to speak, renewed every day and is the result of a statute. We are not saying that imprescriptible faculties are all rights derived directly from statutes, but only that they are derived from a continuing situation, as has been exemplified above."
We are of the opinion as were the above French writers that those servitudes imposed by law are necessary servitudes and are therefore imprescriptible. We reason, that if plaintiff's ancestor in title upon acquiring the tract of land that is enclosed, and upon having designated in his deed of title the area of land which he was to use to have passage from his enclosed estate were never to use that passage, then he could lose something that was guaranteed to him by law.
The general rule that the right of passage is a discontinuous apparent servitude and such a servitude may be established only by title, or by judicial decree, Estopinal v. Storck's Estate, 44 So.2d 704 (La.App.Orl. Cir. 1950), does not apply to those servitudes imposed by law, Bonnabel v. Police Jury, 216 La. 798, 44 So.2d 872 (1950).
There is no question but that the servitude of passage granted by LSA-C.C. art. 701 is granted by law, it is not granted by agreement of the parties. It is imposed by law to guarantee that the enclosed estate will have access to a public road, railroad, or tramroad. As we have already above noted, the language in the Act of Partition setting out the strip of land over which the servitude of passage is to be exercised, was not the creation of the servitude *525 of passage, but merely the designation of the area over which that servitude was to be exercised.
Since we have concluded that the legal servitude of passage as designated and recognized in the Act of Partition has not prescribed, and is still in existence and must be recognized, there is no need to discuss the petitioner-appellant's alternative demand.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is reversed.
It is now ordered, adjudged and decreed that there be judgment in favor of petitioner, James Picard, and against Raymon J. Shaubhut, declaring that the right of way and servitude of passage contained in the Act of Partition between Alphonse Aydell and Mrs. Armethea Aydell, dated October 8, 1949, to be a valid right of way and servitude of passage.
All costs of this appeal are to be paid by defendant-appellee.
Reversed and rendered.