330 So.2d 631 (1976)
DeFELICE LAND CORPORATION
v.
CITRUS LANDS OF LOUISIANA, INC.
No. 7377.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1976.
Lemle, Kelleher, Kohlmeyer & Matthews, Vance E. Ellefson and William S. Penick, New Orleans, for plaintiff-appellant.
Porteous, Toledano, Hainkel & Johnson, William W. Miles, New Orleans, for defendant-appellee.
Before GULOTTA and SCHOTT, JJ., and P. C. ST. AMANT, Assigned Judge.
*632 SCHOTT, Judge.
Plaintiff, alleging that it had no means of ingress or egress to its land, which was surrounded by defendant's land, brought this suit for designation of a servitude of passage across defendant's land, pursuant to LSA-C.C. Art. 699 and, alternatively, for maintenance and recognition of a conventional servitude across defendant's property acquired by plaintiff's ancestor in title. Defendant admitted that plaintiff was entitled to a servitude of passage, and the only issue became the proper location of the right-of-way.
The titles of both pieces of property were once held by a common ancestor in title who included in the act of sale to plaintiff's ancestor the following:
" . . . anything in this act of sale to the contrary notwithstanding the vendee, his heirs and assigns, shall have ingress and egress to the herein conveyed property over and across the full depth of the said conveyed property in front of the forty arpent line."
For many years this right of passage was exercised by plaintiff and its ancestors in title over a shell road running across a piece of defendant's property. This road commenced at a bridge over a drainage canal into plaintiff's property on the southwest and Louisiana Highway 23 on the northeast end of this road. At some point in time after defendant purchased the property to the northeast of plaintiff's, a gate was installed on the southwest side of the road, preventing plaintiff from using it for access to and egress from its property. This is the location which plaintiff championed at the trial of the case for the exercise of the servitude.
Defendant championed another location some distance southeast of the first location which would connect plaintiff's property to Lake Hermitage Road at a point some distance from its intersection with Highway 23.
The evidence shows that the distance between plaintiff's land and Highway 23, at the original location designated as point A, would be 580 feet, while the distance between plaintiff's land and the Lake Hermitage Road, designated as point B, would be 529.84 feet. In either case plaintiff would be required to construct a bridge across the canal dividing its property from defendant's. However, Highway 23 is paved with black-top while Lake Hermitage Road is a shell surfaced road. If the right-ofway were located at point B its use would entail traveling along Lake Hemitage Road for about two miles before reaching Highway 23. Thus, the evidence shows that the location of the servitude at point B would be least injurious to defendant, while location at point B would not be equally convenient to plaintiff as would be location at point A. There is a dispute as to whether the Lake Hermitage Road is a public road or not, with the trial judge finding that it was formerly a private road but was now a public road, made public by use and maintained by the Parish of Plaquemines. While there is no evidence in the record to support this finding, for our purposes here, we will assume that Lake Hermitage Road is a public road in the implementation of the Civil Code articles governing the rights of the parties.
The trial judge decided the case in favor of defendant on the basis of LSA-C.C. Art. 700, which provides as follows:
"The owner of the estate, which is surrounded by other lands, has no right to exact the right of passage from which of his neighbors he chooses.
"The passage shall be generally taken on the side where the distance is the shortest from the inclosed estate to the public road.
"Nevertheless, it shall be fixed in the place the least injurious to the person on whose estate the passage is granted."
*633 Plaintiff contends that C.C. Art. 777 governs the situation:
"The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
"Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
"Yet if this primative assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it."
The nub of the controversy is whether the servitude was already established at point A, in which case plaintiff is entitled to maintenance and recognition of the servitude at that point since point B is not "a place equally convenient" as required by Art. 777, or the location has not been established so that defendant is entitled to fix the servitude at point B, which from its point of view is "the place least injurious" as provided by Art. 700.
The servitude of passage being a discontinuous servitude, Art. 727, can be established only by title and cannot be acquired by possession itself. Art. 766.
The problem here is that plaintiff's general right of ingress and egress equivalent to a servitude of passage was established by title but the location was not. Plaintiff relies upon the following articles of the Civil Code to support its position that it did acquire the servitude at point A:
"Art. 779. If the manner in which the servitude is to be used is uncertain, as if the place necessary for the exercise of the right of passage is not designated in the title, the owner of the estate which owes the servitude is bound to fix the place where he wishes it to be exercised." (emphasis supplied)
"Art. 780. If the title by which a passage is granted does not designate its breadth, nor the manner in which it is to be used, whether on foot, or horseback, or with carriages, the use which the person to whom the servitude is granted previously made of it will serve to interpret the title.
"If there was no such use made of it before, the probable intention of the parties must be considered, and the purpose for which the passage is granted.
"If these circumstances can afford no light, it must be decided in favor of the land which owes the servitude, and a foot passage must be conceded eight feet wide, where it is straight, and ten feet wide where it turns." (emphasis supplied)
As can be seen, where the title does not designate "the manner in which [the servitude] is to be used" the use previously made of it will serve to interpret the title. The words "manner in which it is to be used" in Art. 780 must include the meaning which is given to the same words in Art. 779, i.e., "the place necessary for the exercise of the right of passage." We find nothing to suggest that these words do not have the same meaning in both articles. Furthermore, the jurisprudence indicates that the place for the exercise of the servitude is to be determined by the use previously made of it.
In Burgas v. Stoutz, 174 La. 586, 141 So. 67, plaintiff was awarded an injunction against defendant from closing off a right of passage from plaintiff's property across defendant's where plaintiff's title included "the privilege of using the paved driveway in the rear of the property hereinabove described, which paved driveway is part of *634 Lot `B' belonging to the vendors . . ." Defendant attacked the title on the ground that it was insufficient in that it did not state the length or the width of same. The Court said:
"This particular ground of attack is without merit, since the paved runways are located as physical objects on the surface of lot `B,' the property of defendant, as shown by photographs filed in evidence, and the length and width of same are easily ascertainable. That which can be made certain is considered in law as certain."
In J. C. Trahan, Drilling Contractor, Inc. v. Younger, 169 So.2d 15 (La.App. 2nd Cir. 1964) plaintiff's right-of-way grants were attacked on the grounds that they did not sufficiently describe the servitude as to its width, length and points of traverse. The instruments conferred upon the grantee "the right-of-way to lay, maintain and operate a pipeline over, under, across and through the following described property . . ." There followed a description of the property to be burdened with the servitude. Prior to the institution of the suit plaintiff had constructed and operated the subject pipeline through the property. The court applied the reasoning of Burgas v. Stoutz, recognizing the distinction in that case stemming from the fact that there was a descriptive platt annexed to the deed granting the right-ofway, but held:
". . . Regardless of the failure to describe the exact location of the servitude at the time of the grants this failure was remedied by the construction of the pipeline. It follows that that which was uncertain has been made certain."
We conclude that plaintiff is entitled to have his servitude at point A recognized and maintained.
Accordingly, the judgment appealed from is amended to delete the description of the right-of-way at point B and to substitute therefor a description at point A. Because the judgment of the trial court incorporated a legal description based upon an engineering survey dated April 9, 1975, which described in detail the dimensions and location of the right-of-way at point B, and since no comparable description and survey are available to us for a description of the servitude at point A, the case must be remanded to the District Court in order to incorporate into a final judgment a proper description of the right-of-way at point A. In all other respects the judgment of the trial court is affirmed. Defendant is to pay the costs of this appeal.
AMENDED AND REMANDED.