399 So.2d 545 (1980)
Malcolm Y. BRIAN et al.,
v.
Robert E. BOWLUS et al.
No. 67728.
Supreme Court of Louisiana.
December 15, 1980.
On Rehearing May 29, 1981.
J. Glenn Dupree, Jeff Hughes, Adcock, Dupree & Shows, Baton Rouge, for defendants-applicants.
Robert L. Kleinpeter, Kleinpeter, Kleinpeter & Kleinpeter, Baton Rouge, for plaintiffs-respondents.
Mack E. Barham, Barham & Churchill, New Orleans, for appellants.
MARCUS, Justice.
Malcolm Y. Brian and his wife, Helena S. Brian, together with their son, David Brian, instituted this action for a declaratory judgment against Robert E. Bowlus, Ann M. Bowlus Trust, and William M. Bowlus Trust seeking recognition of the relocation of a servitude in accordance with an Act of Revocation and Relocation of Servitude executed by the plaintiffs on May 30, 1978.
The trial judge rendered judgment in favor of plaintiffs and against defendants recognizing the revocation and relocation of the servitude. Defendants appealed. The court of appeal affirmed, finding as did the trial judge that the act of sale by which Malcolm and Helena Brian sold to Robert Bowlus a certain enclosed parcel of land with a "servitude of way and passage" across the Brian property to a public road established a legal servitude and that the relocation of the servitude was proper.[1] On defendants' application, we granted certiorari to review the correctness of that judgment.[2]
At trial, the case was submitted by the parties on a stipulation of fact and evidence. By act of sale dated December 22, 1966, Malcolm Y. Brian and Helena S. Brian sold to Robert E. Bowlus a certain enclosed parcel of land with a "servitude of way and passage" across the Brian property to a *546 public road. The parcel sold, as well as the servitude, was described with particularity in the act of sale. No specific consideration was mentioned for the servitude. By letter to Malcolm Brian dated the same day as the act of sale, Bowlus agreed that the servitude of passage would continue only until he was able to connect the property purchased to an access road through lands owned by a third party so that the Brian estate would be relieved of the servitude granted in the act of sale. However, he stated that he could not guarantee success in obtaining the "other contemplated access."
Subsequently, on May 2, 1973, Bowlus transferred both the parcel of land and the servitude to the Ann M. Bowlus Trust and the William M. Bowlus Trust. Early in 1978, Malcolm and Helena Brian attempted to negotiate a relocation of the servitude on their property with defendants but were without success. On May 30, 1978, Mr. and Mrs. Brian unilaterally executed an Act of Revocation and Relocation of Servitude and forwarded notice to defendants. A new right-of-way was constructed at plaintiffs' cost. On July 18, 1978, Mr. and Mrs. Brian sold their son David a certain parcel of land which included a portion of the original and relocated servitudes. David Brian subsequently built a personal residence over the original servitude. Plaintiffs filed this action on October 12, 1978.
The principal issue for our determination is whether the right of passage established in the act of sale was a legal or conventional servitude under the then-applicable articles of the civil code.[3] This determination will govern the right of the owner of the servient estate to relocate the servitude.
La.Civ.Code art. 701 then provided:[4]
It is not always the owner of the land which affords the shortest passage who is obliged to suffer the right of passage; for if the estate, for which the right of passage is claimed, has become inclosed by means of sale, exchange or partition, the vendor coparcener or other owner of the land reserved, and upon which the right of passage was before exercised, is bound to furnish the purchaser or owner of the land inclosed with a passage gratuitously, and even when it has not been sold or transferred with the rights of servitude.
Since art. 701 makes the vendor of an enclosed estate bound to furnish the purchaser with a right of passage across his land on which the right had been before exercised, we consider that the plaintiffs simply delineated and located the boundaries of the right of passage on their property by describing it in the act of sale. There is no indication that the servitude was bargained for or that any consideration was paid for it. The very language of art. 701 presupposes that the right of passage be delineated in the act of sale, as the last clause of the article provides that the vendor must furnish the purchaser of an enclosed estate with a passage gratuitously "and even when it has not been sold or transferred with the rights of servitude." (Emphasis added.) Moreover, it is reasonable to infer from Bowlus' letter dated the same day as the act of sale that the servitude was gratuitous in nature in that no part of the purchase price was contemplated to be returned to Bowlus when and if he could obtain another access to his property. The letter also reflected that Bowlus was not *547 concerned with the particular location of the servitude as long as he had access to his property. Under these circumstances, we consider the parties intended to locate the servitude imposed by law by describing it in the act of sale. Hence, the servitude was legal and not conventional. Picard v. Shaubhut, 324 So.2d 517 (La.App. 1st Cir. 1975), writ not considered, 326 So.2d 380 (La. 1976); see Arcuri v. Cali, 244 So.2d 309 (La.App. 4th Cir. 1971).
Having determined that the right of passage established in the act of sale was a legal servitude, we must next consider whether plaintiffs' action in relocating the servitude was proper under La.Civ.Code art. 695[5] which provides:
The owner of the enclosed estate has no right to the relocation of this servitude after it is fixed. The owner of the servient estate has the right to demand relocation of the servitude to a more convenient place at his own expense provided that it affords the same facility to the owner of the enclosed estate.
The above article permits the owner of the servient estate to relocate the servitude to a more convenient place at his own expense provided that it affords the same facility to the owner of the enclosed estate. It is clear here that the relocation of the servitude was to a more convenient place as it allowed Mr. and Mrs. Brian to best utilize and develop their property in furnishing a homesite for their son. Based upon our view of the evidence as to the location, configuration and elevation of the new right-of-way constructed at plaintiffs' expense, we conclude, as did the courts below, that the servitude affords the "same facility" to defendants as the original servitude.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON, C. J., and CALOGERO, J., dissent.
BLANCHE, J., recused.

ON REHEARING
WATSON, Justice.[*]
This is a suit for a declaratory judgment approving the relocation of a predial servitude of passage. A rehearing was granted to consider the contentions that the servitude is conventional rather than legal and that the judgment recognizing the relocation by the owner of the servient estate is erroneous.

FACTS
On December 22, 1966, Malcolm Y. and Helena S. Brian sold Robert E. Bowlus an enclosed parcel of land with a servitude of passage across the Brian property to a public road. In a letter, Bowlus stipulated that he would use his best efforts to secure another access and relieve the Brian estate of the servitude. Brian wanted the servitude relocated to enable his son to construct a residence. The parties' attorneys conferred about the matter, but no agreement was reached. On May 30, 1978, the Brians filed a unilateral act revoking and relocating the servitude. The Brians sold their son, David Brian, a portion of their tract on July 18, 1978. A road was constructed at the Brians' expense at the new location and it was allegedly used by the Bowlus interests[1] *548 for access to their property. An affidavit by a Gulf States' line foreman establishes that the new road can be and was utilized by large trucks. David Brian built a home in the path of the initial servitude. Malcolm Y., Helena S., and David Brian filed this suit for declaratory judgment on October 12, 1978, to have the new servitude location judicially approved.
The trial court gave judgment for plaintiffs, finding that the new location affords "the same facility" to the Bowlus interests. (Tr. 40) The Court of Appeal, First Circuit, affirmed.[2] A writ was granted.[3] On original hearing, the judgment was affirmed. The servitude was described as legal rather than conventional. The opinion therefore relied on former Civil Code article 703 and new article 695 to conclude that the relocation was more convenient to the Brians and offered the same facility to defendants.

ISSUES
The issues on rehearing are: (1) whether the servitude established in 1966 was legal or conventional; (2) whether the new location is "equally convenient"[4]; and (3) whether the judgment recognizing the relocation is correct.

CONCLUSION
On reconsideration, it appears that the servitude is conventional rather than legal.[5] As pointed out by Professor A. N. Yiannopoulos[6] in an article on Enclosed Estates at 23 Loyola L.Rev. 343: "..., a servitude established in favor of lands sold, exchanged, or partitioned, whether voluntarily to prevent an enclavement or by judgment under article 701, ought to be classified as a conventional servitude."[7] The article distinguishes between the right to demand the legal servitude of passage and the conventional servitude which is reflected in a contractthe latter, even if given because of a legal right, has been established by title and is a conventional servitude.
Picard v. Shaubhut[8] held that the servitude granted in an act of partition was not a conventional servitude but merely a recognition of a legal servitude owed by one partitioned estate to the other. This is erroneous. When a servitude is established in a sale, exchange or partition, it has received the mutual assent of the parties. Their agreement establishes a conventional servitude.
*549 DeFelice Land Corp. v. Citrus Lands of Louisiana, Inc.[9] correctly held that a servitude of passage owed to an enclosed estate, when established by title, is governed by Civil Code articles 777, 779 and 780, articles relating to conventional servitudes.
The right to relocate a conventional servitude of passage was given by former Civil Code article 777, which stated that the owner of the servient estate, if the servitude becomes "more burdensome", can offer to the owner of the dominant estate "a place equally convenient", and the latter "can not refuse it". The present article, effective January 1, 1978, is Civil Code article 748 which states that the owner of the servient estate, if he finds the location "more burdensome", may provide another "equally convenient" location which the owner of the dominant estate is "bound to accept". Present article 748 is based on former article 777. Both provide that a servitude that has become "more burdensome" can be moved to an "equally convenient" location. There is no question that this servitude became "more burdensome" to the Brians. Moreover, construction of the son's home would constitute "advantageous repairs" and "useful improvements" to the servient estate. The trial court made a factual finding that the new location affords the "same facility" to the Bowlus interests. The exhibits support that conclusion. There is no significant difference between a servitude which affords "the same facility" and one which is "equally convenient." Both phrases imply a location which is as suitable to the purpose as its predecessor.[10] The servitude location established by the Brians meets this test. The Bowlus interests introduced no evidence that the new location discommodes them.[11]
The Bowlus interests complain about the Brians unilaterally relocating the servitude after attempts to agree on the new location failed. However, when suit was filed for declaratory judgment, that complaint was moot. As the Court of Appeal pointed out, the Brians took the risk that the court would reject the new location. The fact that a servitude has been unilaterally established at a certain place does not require that the situs be either approved or disapproved by the courts. See Morgan v. Culpepper.[12] The Brian suit alleged that the Bowlus interests had refused to agree to the relocation and asked that it be judicially approved. The only evidence indicates that the location is "equally convenient". The Bowlus interests did not allege or prove in what respect the relocation is inconvenient and therefore are bound to accept it. The trial and appellate courts correctly decided that the Brians are entitled to have the servitude fixed at the new location.
For the reasons assigned, the result reached in the original opinion is correct. The judgment of the Court of Appeal is affirmed.
AFFIRMED.
MARCUS, J., concurs and assigns reasons.
GARVEY, J., concurs for reasons assigned by MARCUS, J.
LEMMON, J., concurs in part and dissents in part and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, J., dissents.
*550 MARCUS, Justice (concurring).
I disagree with the majority's finding that the servitude in question is conventional. Rather, I consider that the parties simply delineated and located the boundaries of the right of passage on the servient estate by describing it in the act of sale. There is no indication that the servitude was bargained for or that any consideration was paid for it. The very language of the then article 701 of the Civil Code[1] presupposes that the right of passage be delineated in the act of sale, as the last clause of the article provides that the vendor must furnish the purchaser of an enclosed estate with a passage gratuitously "and even when it has not been sold or transferred with the rights of servitude." (Emphasis added.) Moreover, as stated in the original opinion, it is reasonable to infer from Bowlus' letter dated the same day as the act of sale that the servitude was gratuitous in nature in that no part of the purchase price was contemplated to be returned to Bowlus when and if he could obtain another access to his property. The letter also reflected that Bowlus was not concerned with the particular location of the servitude as long as he had access to his property. Under these circumstances, I consider that the parties intended to locate the servitude imposed by law by describing it in the act of sale. In other words, the servitude in question was legal and not conventional. However, I concur in the result reached by the majority. Accordingly, I respectfully concur.
LEMMON, Justice, concurring in part and dissenting in part.
When the owner of the servient estate desires to relocate a servitude, he must either obtain consent from the owner of the dominant estate or have the relocation approved and the new location fixed by the court. In the judicial proceeding the owner of the servient estate has the burden of proving (a) that the existing servitude has become more burdensome to him or that the servitude prevents him from making useful improvements on his estate and (b) that the new location is equally convenient to the owner of the dominant estate.
I agree that the stipulated evidence in the judicial proceeding supports the trial court's approval of the relocation of the servitude to the new position on the servient estate. I disagree, however, that the filing of the judicial proceeding rendered moot the issue of the propriety of plaintiff's previous actions in unilaterally and extrajudicially relocating the servitude against the will of the owner of the dominant estate, depriving him of his right to use the servitude established in the contract. Nevertheless, since the majority opinion does not pass on the propriety of plaintiffs' actions prior to the filing of this suit, any damages to defendants resulting from those improper actions can be determined in supplemental proceedings in this matter or in another suit.
DENNIS, Justice, dissenting.
I respectfully dissent.
The owner of the servient estate is afforded a right to relocate the servitude if he can prove that (1) the servitude has become "more burdensome" to the servient estate since its original location, or (2) the servitude prevents the construction of "useful improvements" on his estate, and (3) he can provide another equally convenient location for the exercise of the servitude. La.C.C. art. 748 (La.Acts 1977, No. 514, § 1); La.C.C. art. 777 (before amended in 1977); Ogden v. Bankston, 398 So.2d 1037 (La.1981).
Plaintiff's evidence consists principally of exhibits and a brief stipulation. The stipulation *551 does little more than identify the exhibits. The majority opinion, the court of appeal opinion and the trial court reasons for judgment do not explain how this documentary evidence proves that the servitude had become more burdensome since its original location, or that it prevented the construction of useful improvements, and that the servient estate owner has provided another equally convenient location. In my opinion, the evidence does not prove these essential prerequisites for relocation of a servitude.
NOTES
[1] 386 So.2d 662 (La.App. 1st Cir. 1980).
[2] 387 So.2d 597 (La.1980).
[3] Title IV of Book II of the Louisiana Civil Code, Predial Servitudes, previously consisting of arts. 646 to 822, was amended and reenacted by Acts 1977, No. 514, § 1, eff. Jan. 1, 1978, to consist of arts. 646 to 774. Hence, the prior articles which were in effect at the time of the creation of the servitude herein are applicable in the determination of this issue.
[4] La.Civ.Code art. 694 replaced art. 701 but only reproduced the substance of the prior article and did not change the law. The wording of the new article is somewhat clearer on the point in question:

When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation or partition does not mention a servitude of passage.
[5] Article 695 replaces former art. 703 which provided:

When the place for the passage is once fixed, he to whom this servitude has been granted can not change it, but he who owes this servitude may change it from one place to another, in order that it may be less inconvenient to him, provided that it afford the same facility to the owner of the servitude.
Plaintiffs' action in relocating the servitude occurred after the effective date of art. 695. The comment under art. 695 states that "[t]his provision reproduces the substance of Article 703.... It changes the law as it makes relocation of the passage more burdensome for the owner of the servient estate." Since we hereinafter conclude that plaintiffs met the more burdensome standard provided for in art. 695, we need not concern ourselves with the possible retroactive effect of the article.
[*] Honorable Richard Garvey participated in this decision as Associate Justice Ad Hoc in place of Blanche, J., recused.
[1] On June 21, 1979, Mr. and Mrs. Bowlus transferred the property they had purchased from the Brians to the Ann M. Bowlus and William M. Bowlus trusts.
[2] 386 So.2d 662 (La.App. 1 Cir. 1980).
[3] 387 So.2d 597 (La.1980).
[4] LSA-C.C. art. 777 provided:

"The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
"Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
"Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it."
LSA-C.C. art. 748 provides:
"The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
"If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate."
[5] Since the servitude is conventional rather than legal, LSA-C.C. art. 695 does not apply. The argument by counsel for the Bowlus' interests, which relies on the word "demand" in that article, is therefore irrelevant.
[6] W. R. Irby Professor of Law, Tulane University.
[7] 23 Loyola L.Rev. 374.
[8] 324 So.2d 517 (La.App. 1 Cir. 1975) writ refused 326 So.2d 380 (1976).
[9] 330 So.2d 631 (La.App. 4 Cir. 1976).
[10] "Insofar as the owner of the servient estate is concerned, this article [LSA-C.C. art. 703] gives him a right that he might also claim under the terms of article 777." 23 Loyola Law Review 343 at 377.
[11] They have taken no action at any time to protect or maintain the former location. Compare Burgas v. Stoutz, 174 La. 586, 141 So. 67 (1932) where the owner of the dominant estate filed suit to enjoin construction of a fence across his servitude. Also see Nelson v. Warren, 157 So.2d 762 (La.App. 2 Cir. 1963); McLure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080 (La.App. 3 Cir. 1977); and Ogden v. Bankston, 398 So.2d 1037 (La., 1981).
[12] 324 So.2d 598 (La.App. 2 Cir. 1975) writ denied 326 So.2d 377, 378 (1976).
[1] La.Civ.Code art. 701 then provided:

It is not always the owner of the land which affords the shortest passage who is obliged to suffer the right of passage; for if the estate, for which the right of passage is claimed, has become inclosed by means of sale, exchange or partition, the vendor, coparcener or other owner of the land reserved, and upon which the right of passage was before exercised, is bound to furnish the purchaser or owner of the land inclosed with a passage gratuitously, and even when it has not been sold or transferred with the rights of servitude.