421 So.2d 423 (1982)
Roy A. CAZES
v.
Dorothy Cedotal ROBERTSON.
No. 82 CA 0101.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
George L. Clauer, III, Ernest R. Eldred, Baton Rouge, for plaintiff-appellant Roy A. Cazes.
Fred H. Belcher, Jr., Baton Rouge, for defendant-appellee Dorothy Cedotal Robertson.
Before COVINGTON, LEAR and LANIER, JJ.
*424 COVINGTON, Judge.
Roy A. Cazes, plaintiff, has devolutively appealed the judgment of the trial court in favor of Dorothy Cedotal Robertson, defendant, wherein the court refused to grant a declaratory judgment recognizing that plaintiff had a servitude of passage for his own exclusive use and denied him the requested injunctive relief. We affirm.
Our review of the record convinces us that there is no basis for plaintiff's claim of an exclusive servitude. The claim arises out of these facts: In 1968, Jessie H. Crawford, the owner of certain acreage in East Baton Rouge Parish, Louisiana, divided the property into two certain tracts, designated as Tract Y and Tract Z. After the division, Tract Z became land-locked, and on the survey map of resubdivision, Crawford made the following declaration:
"I, Jessie H. Crawford, do hereby dedicate the 60 ft. wide servitude of passage shown hereon for the perpetual private use of the owner of Tract `Z'." (This language was repeated on a map purportedly revising the servitude, dated June 5, 1970.)
Crawford had sold Tract Z to Mr. and Mrs. Thomas C. Crawford by cash deed dated May 31, 1968.[1] Thereafter, the property was conveyed on July 20, 1972, to plaintiff, the present owner of Tract Z. Defendant, Dorothy Cedotal Robertson, is the owner of a tract of land through which the "60 ft. wide servitude of passage" runs to reach Tract Z. Alleging that defendant's tenants (who occupy mobile homes on defendant's premises) were causing excessive wear on the passageway and were interfering with his right of exclusive use of the passageway, plaintiff seeks injunctive relief enjoining defendant's personal use of said servitude and granting the right of use to other persons. Particularly, plaintiff asks that defendant's tenants not be allowed the use of the passageway. In addition, plaintiff seeks to prevent defendant from creating a mobile home park, allegedly in violation of a parish zoning ordinance.
After trial on the merits for a permanent injunction, by stipulation of the parties, the trial court rendered the judgment herein appealed. In his written reasons for judgment, the trial judge stated in part:
"In summary, it is the opinion of the Court that a servitude was not created by Jessie Crawford in 1968. The Court further finds a servitude was never created by the owner of one parcel of land in favor of the owner of another parcel of land. Nor was a servitude created in favor of any parcel of land presently owned by plaintiff. Even if a servitude was granted, it is the opinion of this Court that it would be a legal servitude of passage and governed by the laws pertaining thereto."
First, plaintiff-appellant argues that the trial court erred in determining that the servitude of passage was a "legal servitude" and not a "conventional servitude." There is no merit to this argument. The act from Jessie H. Crawford to Mr. and Mrs. Thomas C. Crawford makes no mention of a transfer of a servitude to the vendees. It merely refers to a certain map for a description of the tract of land conveyed. In so doing, it reads:
"Commence at a point on the southerly side of Milldale Road which point is the centerline of the right of way to the hereinafter described property ...."
From the record, we find that the servitude of passage in the instant case is a legal servitude, not a conventional servitude. It arose by operation of law; it was not established by mutual assent of the parties in a contract. It was not established in favor of lands conveyed by deed, by exchange, or by partition, or by any other manner of voluntary transfer.
*425 When servitudes are imposed by law, their use and extent are "confined to the wants of the person who has it." This principle is set out in LSA-C.C. art. 722[2] in its definition of "servitude of passage," as follows:
"Predial servitudes are established by all acts by which immovables may be transferred. Delivery of the act of transfer or use of the right by the owner of the dominant estate constitutes tradition."
Generally speaking, a servitude is imposed upon an "estate" or in favor of an "estate"; it is not imposed on the person, or in favor of the person. LSA-C.C. art. 646. That is what was done in the instant case. Despite the language "use of the owner of Tract Z" in confirming the servitude of passage in the survey map of resubdivision, it is evident that the servitude was intended as a real benefit to the "estate" itself, not to the "person." Consequently the servitude must be construed as a real right, not a right which was personal to the "owner of Tract Z." LSA-C.C. art. 733 provides:
"When the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude."
A real advantage was secured for the dominant estate, Tract Z, because without the servitude of passage, the tract would have been land-locked, thereby diminishing its value and impairing its usefulness. Hence, as shown, the benefit conferred by the confirmation of the servitude was not personal to any particular person or owner, but was of obvious value and advantage to the estate.

This right of passage being in favor of immovable property is a "predial" servitude, i.e., a real right which is inseparable from the immovable to which it is attached, and one which remains the same regardless of any change of ownership of the estates owing or due the servitude. LSA-C.C. art. 650; Brown v. Terry, 103 So.2d 541 (La. App. 1 Cir.1958). For these reasons, we hold the servitude to be predial in nature and imposed on the dominant estate (Tract Z) by law.
In the case at bar there was no contract between appellant and his ancestors in title conveying a servitude of passage to him. The servitude was not reflected in a contract or established by title. It was imposed by law, and merely unilaterally confirmed by Jessie H. Crawford. Hence, the instant case is factually distinguishable from Brian v. Bowlus, 399 So.2d 545 (La. 1981), in that in Brian the servitude was conveyed by an act of sale, thus established by title; here there was no such conveyance or establishment by title, as discussed above.
Next, appellant urges that the trial court was in error in determining that the alleged servitude was not for the private use of plaintiff to the exclusion of all others. The following articles of the Louisiana Civil Code govern the respective rights of the parties (estates) to a legal servitude of passage relevant to the extent and manner of the use of the servitude:
The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate. L.S.A.-C.C. art. 690.
The owner of the enclosed estate may construct on the right of way the type of road or railroad reasonably necessary for the exercise of the servitude. L.S.A.-C.C. art 691.
The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands. L.S.A.-C.C. art. 692.
The owner of the enclosed estate has no right to the relocation of this servitude after it is fixed. The owner of the servient estate has the right to demand relocation of the servitude to a more convenient *426 place at his own expense, provided that it affords the same facility to the owner of the enclosed estate. L.S.A.-C.C. art. 695.
Thus, it appears from the quoted codal articles that although the owner of the dominant estate has the right to pass through the servient estate to get to a public road, this right does not shut out all others from its use; most certainly, the owner of the dominant estate is not given a right to hinder the owner of the servient estate in the enjoyment of his own property. Patin v. Richard, 291 So.2d 879 (La. App. 3 Cir.1974). There is no right given to the owner of the dominant estate to prohibit the use of such servitude by the owner of the servient estate or by others holding rights through him.
We thus find that there was no intention on the part of Jessie H. Crawford to exclude from use of the servitude, which was actually an existing passageway, those tenants living nearby who would have no other means of ingress and egress to their homes. The purpose of confirming this servitude was simply to allow the "owner" of Tract Z to traverse the Crawford Tract to get to a public road. It was not intended to award Tract Z's owner an exclusive franchise of passage.
Finally, appellant contends that the trial court erred in denying him injunctive relief from alleged violation of the parish zoning ordinance. On this issue, the trial court found that "no such threat [of violation of the parish zoning ordinance] has been proven to warrant the issuance of an injunction." This factual question was decided adversely to plaintiff, and the evidence in the record supports the trial judge's conclusion. The record establishes that the finding of the trial court is not clearly wrong on this issue. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The case relied upon by appellant is clearly factually distinguishable. Howard v. Langevin, 363 So.2d 928 (La.App. 2 Cir.1978), concerned the defendant's violation of a zoning ordinance. Such violation was established on the trial and the defendant conceded on appeal that by erecting an excessively high fence, his activities violated the Caddo Parish zoning ordinance.
For the foregoing reasons, we affirm the trial court's judgment. All costs on appeal are assessed against the appellant, Roy A. Cazes.
AFFIRMED.
NOTES
[1] The Act of Cash Sale to the Thomas C. Crawfords refers to a certain map in order to describe the property conveyed. There is no express mention that a "servitude of passage" or "right of way" was transferred with the land; however, the deed contains the following language: "Commence at a point on the southerly side of Milldale Road which point is the centerline of the right of way to the hereinafter described property, ...
[2] All references to Civil Code articles are as amended by Act 514 of 1977, effective January 1, 1978.