VICTORY, Judge.
Plaintiff, Gordan Carson, instituted this proceeding for the issuance of a mandatory and prohibitory injunction ordering the defendant, Jack Bogan, to remove a gate which was placed across a servitude of passage benefiting Carson’s estate. We reverse and render judgment granting injunctive relief.

*868
FACTS

Carson is the owner of a tract of land, enclosed from access to a public road, upon which he maintains a recreational camp and boat launch. An adjoining tract of land, owned by Bogan, lies between Carson’s land and the public road. Carson and Bogan derive their respective titles from a common ancestor in title, Fred L. Jackson. When Jackson purchased the property from Martha Havis Johnson, a 15 foot wide servitude of passage was granted in his favor. The servitude language of the instrument provides:
Vendors herein further grant the right of servitude of passage as shown on the attached plat marked “access servitude” and which servitude and easement will run as long as the entrance way is not relocated outside the area designated on the attached map and as long as no other driveway or entrance to the property from the main road is established.
Carson and his ancestors in title have used the servitude since its creation, and no other driveway or entrance to the property from the main road has been established.
Bogan purchased the property subject to the servitude. On or about August 3, 1992, he erected a fence along his property line and a double gate at or about the entrance to the servitude. Bogan provided Carson with a key to this gate. Prior to the installation of Bogan’s gate, Carson accessed the servitude through a gate known as the “Willow Springs” gate. The Willow Springs gate, located behind the new gate, was maintained by Carson although it had been erected on the servitude by a previous owner. After installing the new gate, Bogan removed the lock from the Willow Springs gate and returned it to Carson.
Carson testified that, even though Bogan gave him a key to the gate, its installation interfered with his use of the servitude. In particular, he complained that: (1) the placement of the gate created a more difficult angle of entry onto the servitude; (2) the double gate must remain locked, unlike the Willow Springs gate which he would leave unlocked for a month at a time; and (3) his guests have had trouble using the servitude to get to the boat launch and camp.
Bogan testified that he divides his time between two residences, one of which is on the tract of land burdened with the servitude. He explained that he built the fence and gate because he has been burglarized several times, and because passersby used the area around the Willow Springs gate as a turnaround and trash dump. Therefore, he positioned the double gate closer to the parish road, between the Willow Springs gate and the road, to alleviate the dumping and loitering problem. The servitude is 15 feet wide at the point where it meets the parish road. Bogan stated that he constructed the gate 25 feet in width in order to accommodate Carson’s use of the servitude and provided Carson with a key. Although he preferred that the gate remain locked, Bogan testified he did not insist on it.
After trial on the merits, the trial court rendered judgment rejecting Carson’s demands for a mandatory and prohibitory injunction, finding that Carson’s use of the servitude had not been interfered with or diminished. The trial court reasoned that the double gate is wider than the servitude and is in close proximity to the Willow Springs gate, admitted by Carson to be kept locked at least periodically. The issue presented on appeal is whether the trial court erred in denying the injunctive relief.

DISCUSSION

LSA-C.C. Art. 748 governs this conventional servitude of passage, established by title. Brian v. Bowlus, 399 So.2d 545 (La.1980). Article 748 states, in part, that, “the owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.” Cf. Hudson v. McAvoy, 380 So.2d 1248 (La.App.3d Cir.1980), writ denied 384 So.2d 794 (1980); and Hymel v. St. John the Baptist Parish School Board, 303 So.2d 588 (La.App.4th Cir.1974), writ denied 307 So.2d 370 (1975).
In Hymel, supra, the court found that the right-of-way had been diminished in contravention of LSA-C.C. Art. 777, now Article 748. There, the plaintiff enjoyed a 25-foot servitude used for access to his sugar cane *869 production operation. An overhang of a school roof encroached upon the plaintiffs right-of-way by several feet. The court concluded that there was no basis for allowing the defendant to construct any obstacles within the roadway which impeded the passage of plaintiffs equipment and ordered the removal of the encroachment.
Similarly, in Hudson, supra, the plaintiff, Hudson, used a 30-foot servitude for passage to and from his business. Although Hudson installed gates at the front and rear of the servitude, their use was later discontinued. The defendant, McAvoy, purchased property adjacent to Hudson’s, a portion of which was burdened with the servitude in favor of Hudson. Reasoning that traffic on the servitude endangered his children, McAvoy constructed a 23-foot gate across the servitude and provided Hudson with a key. Hudson, as does Carson in this case, contended that, despite being provided with a key, the installation of the gate interfered with his use of the servitude. In ruling in favor of Hudson, the court found that:
The law is clear and unambiguous. The plaintiff is entitled to free and unencumbered use of his servitude. The defendant has no legal basis for either narrowing the servitude from 30 feet to 23 feet by constructing a gate across the road or restricting or diminishing the use of the servitude by the plaintiff, his suppliers or customers. This reduction of the servitude and inconvenience to the plaintiff is precisely what LSA-C.C. Art. 748 prohibits.
In determining that Carson’s use of the servitude had not been interfered with or diminished, the trial court relied upon South Central Bell Telephone Company v. Dempster, 303 So.2d 280 (La.App.1st Cir.1973). In that case, South Central Bell sought an injunction to prohibit the owners of land, burdened with a servitude in favor of South Central Bell, from maintaining a shed constructed upon the servitude. The court declined to order the removal of the shed, finding that there was no evidence in the record to show whether the shed obstructed or interfered with the use of the servitude.
The trial court’s reliance upon South Central Bell, supra, is misplaced. In the case at bar, not unlike the facts in Hymel, supra, and Hudson, supra, there is evidence in the record to support Carson’s contention that the installation of the double gate has made and will make his use of the servitude more inconvenient. Although the Willow Springs gate was outfitted with lock and key, as is the new double gate, control of the Willow Springs gate rested with Carson. He alone determined whether the gate remained open or closed, locked or unlocked. Further, he consented to the presence of the Willow Springs gate.
The gate placed by Bogan, without Carson’s consent, clearly makes the use of the servitude more inconvenient for Carson. Although he has a key, he will be required to exit his vehicle to open and close the gate as he enters and exits his property.[1] Further, any guests that visit Carson’s property will need a key and will also have to open and close the gate. Thus, we conclude that the presence of a gate across the servitude, without Carson’s consent, is prohibited by LSA-C.C. Art. 748.

DECREE

For the foregoing reasons, the trial court judgment is reversed. A mandatory injunction is hereby issued in favor of Gordan Carson, directing Jack Bogan to remove the gate which has been placed across the servitude. All costs in this court and the trial court are to be borne by Jack Bogan.
REVERSED AND RENDERED.

. We do not agree with Carson’s contention that Art. 748 is also violated because the location of the fence and the gate makes it harder for a vehicle to turn onto the servitude. Carson's right of passage is 15 feet, and no more. Bogan may take measures to improve the security of his property, so long as he does nothing to diminish Carson’s 15 foot wide servitude or make it more inconvenient to use by placing something in or over the servitude. However, that does not mean Bogan must allow Carson more than the 15-foot width of the servitude.